**STATE of Tennessee, Appellee,**

v.

**Tina L. WILLIAMSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 19, 1995.

Karen H. Hornsby, Assistant Public Defender, Murfreesboro, for appellant on appeal.

Russell N. Perkins, Assistant Public Defender, Murfreesboro (Gerald L. Melton, District Public Defender, of counsel), for appellant at trial.

Charles W. Burson, Attorney General & Reporter, Eugene J. Honea, Assistant Attorney General, Nashville, Guy R. Dotson, District Attorney General, Murfreesboro, William C. Whitesell, Jr., Assistant District Attorney General, Murfreesboro, for appellee.

## OPINION

JONES, Judge.

The appellant, Tina L. Williamson,[1] was convicted of vehicular homicide, a Class C felony, and vehicular assault, a Class D felony, by a jury of her peers. The trial court found that the appellant was a standard offender and imposed the following Range I sentences: (a) confinement for five (5) years in the Department of Correction for the offense of vehicular homicide, and (b) confinement for three (3) years in the Department of Correction for the offense of vehicular assault. The sentences are to be served concurrently.

Six (6) issues are presented for review. The appellant contends that the evidence is insufficient, as a matter of law, to support a finding by a rational trier of fact that she is guilty beyond a reasonable doubt because the state failed to prove that (1) her conduct was the proximate cause of the death of one victim and the injuries sustained by the other victim, and (2) she knowingly permitted Diane Jost to operate her motor vehicle when the collision that killed one victim and injured a second victim occurred. The appellant also contends that the trial court committed error of prejudicial dimensions by erroneously admitting into evidence (a) the

---

1. The appellant was indicted under the name of Tina L. Williamson, which was her correct name when the offenses in question were committed and the Rutherford County Grand Jury returned the indictment charging her with vehicular homicide and vehicular assault. It is the policy of this Court to use the name appearing on the face of the indictment in the style of an opinion.

The appellant testified that she was married following the return of the indictment. Her married name is Tina L. Williamson Powers.

testimony of Charles H. Davis because his testimony "was cumulative, inflammatory, unfairly prejudicial and served no legitimate purpose other than to inflame the passions, prejudices and sympathy of the jurors" and (b) a photograph of the stillborn infant because it tended to "inflame the passions, prejudices and sympathy of the jurors." She further contends that the trial court failed to properly instruct the jury in accordance with Tennessee Pattern Jury Instruction 40.02, the trial court failed to properly weigh the enhancement and mitigating factors when sentencing her, and the trial court failed to consider sentencing alternatives to incarceration.

The judgment of the trial court is affirmed.

The Old Nashville Highway between Symrna and Murfreesboro is a two lane roadway. There is a steep hill in the roadway near its intersection with Brinkley Road. There are double yellow lines on both sides of the hill which prohibit drivers who approach the hill from passing another vehicle. The operator of a motor vehicle cannot see a vehicle travelling in the opposite direction until the driver reaches the crest of the hill.

On September 2, 1991, at approximately 3:40 p.m., Lisa Davis was travelling west on the Old Nashville Highway near its intersection with Brinkley Road. She had just left her place of employment and was en route to her home. Diane Jost was driving the appellant's motor vehicle east on the Old Nashville Highway. As Jost was ascending the hill, she drove across the center line and into the lane of traffic occupied by Mrs. Davis. When Mrs. Davis reached the crest of the hill, she saw Jost and the appellant immediately in front of her. She attempted to stop her vehicle, but Jost was too close and there was a motor vehicle following Jost in the eastbound lane. As a result, the front of the vehicle being driven by Jost struck the front of the Davis vehicle. The collision occurred in Davis's lane of traffic. Davis was seriously injured as a proximate result of the collision. Her unborn baby, which she had carried for thirty-eight weeks, died as a proximate result of the collision. Jost also died due to injuries sustained in the collision.

The parties stipulated that the appellant was the owner of the vehicle Jost was driving; and a blood sample taken from Jost's body established that her blood contained .18 grams of ethyl alcohol. The blood sample taken from Mrs. Davis was negative for both alcohol and drugs. The appellant refused to submit to a blood test.

The appellant arose at 9:00 a.m. on the day in question. She consumed three mixed drinks and took two Loritab tablets for pain before going to Grizzly's Bar at noon. While at Grizzly's, the appellant consumed several beers. Diane Jost and her boyfriend arrived at Grizzly's about 1:00 p.m. They consumed two or three beers each. Jost borrowed $5.00 from the appellant so that they could purchase additional beer.

Jost and the appellant left Grizzly's at approximately 1:40 p.m. The appellant drove to her former place of employment and obtained her final pay check. She and Jost then went to the VFW Club in Symrna to cash the check. What occurred at the club and the condition of the appellant after she left the club is disputed.

Three people who were at the VFW Club testified that the appellant and Jost arrived at approximately 2:00 p.m. The appellant ordered a mixed drink, but she did not consume the entire drink. Jost ordered one beer. The bartender cashed the appellant's pay check before the appellant and Jost left the club. However, there is a serious conflict in the testimony of the appellant and these witnesses as to what the appellant did while in the club.

All three witnesses testified that the appellant sat at the bar the entire time she was inside the club. They also testified that she appeared "normal." One witness described the appellant as being in "fairly good shape" and "didn't seem to be in too bad a shape." The witnesses testified that the appellant was conscious, alert, able to walk into and out of the club without difficulty, and able to endorse and cash her check without difficulty. They testified that the appellant and Jost were inside the club between twenty and thirty minutes before leaving. This means

that the appellant and Jost left the VFW Club at approximately 2:30 p.m.[2]

The appellant testified that she played pool with Jost and spent $20 playing a video poker machine. She drank one mixed drink and ordered a second drink. Jost drank a beer and tequila. Later, Jost ordered a second beer. The appellant agreed that the alcoholic beverages she consumed did not impair her ability to play pool or play the video poker machine. However, she stated that she "was getting off on the pain relievers, and I felt drunk." She had not eaten since the previous day.

According to the appellant's version of the facts, she became ill and told Jost that she was leaving. After they exited the club, the appellant became ill and began to regurgitate. When she felt that she was going to faint, she opened the car door and sat on the passenger side of her vehicle. She placed her pocketbook on the console of the vehicle. While the individuals who were at the VFW club said that neither the appellant nor Jost reentered the facility, the appellant believes that Jost reentered the club after she became ill. The appellant states that the next thing she remembers is waking up in the Vanderbilt University Hospital.

### I.

The appellant challenges the sufficiency of the convicting evidence on two grounds. She contends the state failed to prove beyond a reasonable doubt that she (a) was the proximate cause of the infant victim's death or the injuries sustained by Mrs. Davis, and (b) knowingly permitted Diane Jost to drive her motor vehicle.

### A.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, *cert. denied*, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

Questions concerning the credibility of the witnesses, the weight and value to be given to evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage*, 571 S.W.2d at 835. In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.

### B.

### (1)

Before the appellant could be convicted of vehicular homicide, the state had to prove

---

**2.** What occurred between 2:30 p.m. and 3:40 p.m. is not established by the record. The appellant admitted that the driving time between the VFW Club and the situs of the collision was a matter of minutes.

beyond a reasonable doubt that (a) Diane Jost committed the offenses of vehicular homicide and vehicular assault and (b) the appellant was criminally responsible for the offenses committed by Diane Jost.

If Jost had survived the collision and was subsequently prosecuted for vehicular homicide, the state would have to prove beyond a reasonable doubt that there was a reckless killing and:

a) Jost operated an automobile, airplane, motor boat, or other motor vehicle;

b) Jost was under the influence of an intoxicant while operating the vehicle; [3] and

c) a person was killed as a proximate result of Jost operating the vehicle while under the influence of an intoxicant.

Tenn.Code Ann. § 39–13–213(a)(2).

The elements of vehicular assault are almost identical to the elements of vehicular homicide. Again, if Jost had survived the collision and was subsequently prosecuted for vehicular assault, the state would have to prove beyond a reasonable doubt that:

a) Jost operated a motor vehicle;

b) Jost was under the influence of an intoxicant while operating the motor vehicle;

c) Jost recklessly inflicted serious bodily injury to another person while she was operating the motor vehicle; and

d) the victim was injured as a proximate result of Jost operating the vehicle while under the influence of an intoxicant.

Tenn.Code Ann. § 39–13–106(a).

The evidence adduced at the trial established beyond a reasonable doubt that Jost was guilty of both vehicular homicide and vehicular assault. The uncontradicted evidence established that Jost was driving the appellant's motor vehicle when the collision with the Davis vehicle occurred. It was stipulated that Jost's blood alcohol content was .18%. The evidence establishes and the appellant concedes in her brief that the death of the infant and the injuries sustained by

Mrs. Davis were the proximate result of Jost driving the motor vehicle while under the influence of an intoxicant. Finally, the evidence establishes and the appellant concedes that the infant was a "viable fetus" within the meaning of Tenn.Code Ann. § 39–13–214(a), and, therefore, a "person" within the meaning of the vehicular homicide and the vehicular assault statutes.

### (2)

▉ The appellant makes a novel argument as to why she is not guilty of either vehicular homicide or vehicular assault. She contends that the state was required to establish beyond a reasonable doubt that she, as the owner/passenger, was the proximate result of the infant's death and Mrs. Davis's injuries. She states in her brief:

> [T]he act of Diane Jost getting behind the wheel of the car and doing the actual driving was an intervening cause between the appellant's actions and the resulting accident. To allow "bootstrapping" of the proximate cause requirement to extend to a party who in reality did not directly cause the event, ignores the deliberate act the legislature took when it added the proximate cause requirement to the vehicular homicide statute.

This argument is predicated upon a false premise. Both the vehicular homicide statute and the vehicular assault statute proscribe the infliction of death and serious bodily injury when the death and injury is the proximate cause of a person operating a motor vehicle while under the influence of an intoxicant or a drug. The elements of these offenses were not intended to proscribe the conduct of a person who aids and abets either of these offenses. The General Assembly has provided a separate and distinct statute that proscribes the conduct of a person who aids and abets the commission of a crime. Tenn.Code Ann. § 39–11–401 provides that a person who is criminally responsible for the conduct of another may be liable for the crime actually committed by the principal.

---

**3.** An accused may also be convicted of vehicular homicide if the accused's conduct creates "a substantial risk of death or serious bodily injury to a person." Tenn.Code Ann. § 39–13–213(a)(1).

In short, the state had the burden of proving that (a) Jost, as the operator, committed these offenses, and (b) the appellant was criminally responsible for her conduct. The state was not required to prove that the appellant committed an act at or near the commission of these offenses that proximately caused the collision, the death of the infant, and the injuries sustained by Mrs. Davis.

## C.

■ The state tried the appellant on the theory that she was criminally responsible for the conduct of Jost in the commission of the two offenses, vehicular homicide and vehicular assault. The jury found that the state proved its theory and convicted the appellant of these two offenses. The appellant contends in this Court that the evidence is insufficient to support her conviction as a criminally responsible party. She argues that the state failed to prove beyond a reasonable doubt that she " 'knowingly' gave Diane Jost permission to drive her automobile." In addition, she asserts that the state failed to establish that she acted "recklessly," the same culpable mental state that must be shown to convict the person committing the offense. The state asserts that the appellant's contention "is not an accurate statement of the culpable mental state appropriate in this case." According to the state, it was not required to prove a "specific intent."

Tenn.Code Ann. §§ 39–11–401 and –402 establish criminal responsibility for the conduct of another. These statutes provide:

Section 39–11–401. Parties to Offenses.—(a) A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both.

(b) Each party to an offense may be charged with commission of the offense.

Section 39–11–402. Criminal Responsibility for Conduct of Another.—A person is criminally responsible for an offense committed by the conduct of another if:

(1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

As can be seen, the specific statute applicable to the facts of this case, Tenn.Code Ann. § 39–11–402(2), does not address the culpable mental state of a person who aids and abets the commission of a criminal offense. The statute simply states that an aider and abettor must act with "intent."

The Tennessee Criminal Sentencing Reform Act of 1989 established guidelines for the construction of provisions contained in the Act. Tenn.Code Ann. § 39–11–104 states: "The provisions of this title shall be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." This statute is consistent with the rules of statutory construction. *See State v. Horton,* 880 S.W.2d 732, 734 (Tenn. Crim.App.1994).

The word "intent" is synonymous with the words "intention" and "intentional." *Webster's Ninth New Collegiate Dictionary,* page 629 (1986); *Roget's Thesaurus of English Words and Phrases,* page 260 (1979). In legal parlance, the word "intentional" is defined as: "Performed or done with intent." *Ballentine's Law Dictionary,* page 646 (3rd ed. 1969). In *Smith v. State,* 70 Tenn. 614, 619 (1879), the Supreme Court defined the word "intent" in the following manner:

Webster defines "intent" to mean a design, a purpose, intention, meaning, drift, aim. Burrill defines it to be, "the presence of will in the act which consummates a crime.

It is the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge and with full liberty of action willing and electing to do it."

This Court concludes that the culpable mental state of an aider and abettor is "intentional." The term "intentional," as a culpable mental state, "refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn.Code Ann. § 39–11–302(a).

If the appellant intentionally permitted Jost to operate her motor vehicle when she knew that Jost was intoxicated, the appellant is criminally responsible for the crimes committed by Jost. On the other hand, if Jost undertook to drive the appellant's motor vehicle without the appellant's consent, and the appellant was unconscious as she claims, the appellant is not criminally responsible for the crimes committed by Jost. The factual question that must be resolved is: Did the State of Tennessee present sufficient evidence to permit a rational trier of fact to find that the appellant was conscious and intentionally permitted Jost to operate her motor vehicle while under the influence of an intoxicant?

The appellant testified that she began feeling ill while inside the VFW Club. She told Jost that she was ill and they would have to leave. The appellant exited the building, regurgitated, sat on the passenger side of her vehicle, regurgitated again, and subsequently lost consciousness. She opined that Jost took the keys from her purse without her permission or knowledge while she was unconscious, and Jost began driving her motor vehicle. The appellant testified that she had no memory of what occurred from the time she lost consciousness until she awoke in the Vanderbilt University Hospital.

The state presented several witnesses to establish the appellant's physical condition when she left the VFW Club and while she was riding as a passenger in her vehicle. These witnesses gave direct and circumstantial evidence that established the appellant was conscious before and after the collision with the Davis vehicle.

Those present at the VFW Club stated that the appellant "seemed to be in fairly good shape." They described her as being awake, alert, and well oriented. She was able to sign and cash her payroll check. In summary, they were of the opinion that the appellant was "normal." She did not appear to be intoxicated.

Mr. and Mrs. Joseph Jordan were immediately behind the appellant's motor vehicle. They saw both the appellant and Jost turn their bodies several times toward the middle of the vehicle, face each other, and it appeared to them that Jost and the appellant kissed. They also observed the appellant move her hands towards Jost and then withdraw her hands. It appeared to the Jordans that the appellant was giving Jost something.

The Murfreesboro police officer dispatched to the scene of the collision testified that the parties were still in their respective vehicles when he arrived. He asked the appellant questions about the collision. Based upon his observations, the appellant was awake and conscious. Later, another police officer talked with the appellant at the Middle Tennessee Medical Center before she was transported to Vanderbilt University Hospital. He testified that the appellant was conscious. She answered the officer's questions. She complained of pain while he was with her. She refused to submit to a blood alcohol test to determine her degree of intoxication.

The appellant talked to Jost's boyfriend, John Reynolds, several months after the date in question. She told Reynolds that "Diane [Jost] looked up and saw the car coming. She was at such a rate of speed that she [Diane] didn't have time to get out of the car's way, that she was in the other lane [opposing lane of traffic]." She also told Reynolds that Jost nodded and then looked ahead just before the impact occurred. Later, the appellant told Reynolds that she had passed out in the VFW Club parking lot.

While at the VFW Club, the appellant testified that she played a video poker machine by herself. She also played pool with Jost. She testified that the alcoholic bever-

ages she consumed did not impair her ability to play pool or play the video poker machine.

As can be seen, there is an abundance of evidence that the appellant was conscious, alert, and oriented when she left the VFW Club, while riding in her vehicle with Jost, at the scene of the collision, and later at the hospital. Thus, a trier of fact would be warranted in finding that the appellant intentionally permitted Jost to operate her motor vehicle. In other words, the jury had the right to reject the appellant's testimony and believe the testimony of the aforementioned witnesses.

This issue is without merit.

## II.

▇ Before the state called Charles H. Davis, the grandfather of the infant victim, the appellant moved the trial court *in limine* to exclude Davis's testimony. The appellant argued that Davis's testimony would be "repetition of testimony we've already had, cumulative testimony that will be presented by the doctor, and [his testimony] can only be offered to try to inflame the sympathies and the passions of the jury." The state argued that Davis's testimony was relevant to establish the viability of the infant victim, which the state had to prove before the appellant could be convicted of vehicular homicide. The appellant argued in rebuttal that the viability of the infant was not an issue. Defense counsel stated that the viability of the infant "has already been conceded" because the assistant district attorney general stated in his opening statement that "it's been conceded." These same reasons were given for the exclusion of a photograph of the stillborn infant that the state wanted to introduce through Mr. Davis's testimony.

The trial court observed that the viability of the infant was not embraced in the stipulation of facts submitted to the court. Defense counsel agreed that there was no formal stipulation regarding the viability of the infant victim. The trial court denied the appellant's objection and permitted Davis to testify. The trial court also permitted the photograph of the infant victim to be introduced through Mr. Davis.

In this Court, the appellant contends that Mr. Davis's testimony was "not relevant to any issue in dispute ..., was cumulative, inflammatory, unfairly prejudicial, and served no legitimate purpose other than to inflame the passions, prejudices and sympathy of the jurors...." The state contends that Davis's testimony and the photograph were "relevant and probative for the jury to know that the infant was not an abstraction" but a "viable human being."

In this jurisdiction, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn.R.Evid. 401. Although relevant evidence is generally admissible, Tenn.R.Evid. 402, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn.R.Evid. 403.

The fact that relevant evidence is prejudicial does not mean the evidence must be automatically excluded. As this Court said in *State v. Dulsworth*, 781 S.W.2d 277, 287 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1989): "Any evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law." *See State v. Gentry*, 881 S.W.2d 1, 6 (Tenn.Crim.App.1993), *per. app. denied* (Tenn.1994). As Rule 403 states, the "danger of unfair prejudice" must "substantially outweigh" the probative value of the evidence before the accused is entitled to have the evidence excluded.

The determination of whether evidence is relevant, or, if relevant, should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court. *State v. Hill*, 885 S.W.2d 357, 361 (Tenn.Crim.App.), *per. app. denied* (Tenn.1994). In deciding these issues, the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial.

*See Dulsworth,* 781 S.W.2d at 287. If a trial court in the exercise of its discretion finds that evidence is relevant within the meaning of Rule 401, and the accused is not entitled to have the evidence excluded for one of the grounds set forth in Rule 403, this Court will not interfere with the exercise of this discretion unless it appears on the face of the record that the trial court clearly abused its discretion. *State v. Hayes,* 899 S.W.2d 175, 183 (Tenn.Crim.App.), *per. app. denied* (Tenn.1995).

Since the appellant did not stipulate that the infant victim was a viable fetus within the meaning of Tenn.Code Ann. § 39–13–214, the state was required to prove the viability of the infant as an element of vehicular homicide. Consequently, testimony concerning this issue of fact was relevant. The probative value was not "substantially outweighed by the danger of unfair prejudice ... or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court did not abuse its discretion in ruling that Mr. Davis's testimony and the photograph of the infant victim were admissible.

Mrs. Davis, the mother of the infant, underwent surgery in an effort to save the infant. She did not see the infant after it was removed from her womb. Mr. Davis was at the hospital when the infant was delivered stillborn. The hospital personnel clothed the infant and permitted Mr. Davis and others who were present to see the infant. Mr. Davis held the infant. A photograph of the infant was introduced through his testimony. In summary, Mr. Davis's testimony and the photograph established the viability of the infant. The cumulative nature of this testimony and the testimony of the physician who delivered the infant did not substantially outweigh the probative value.

Mr. Davis was direct and to the point. He did not embellish the facts, and he did not become emotional during the course of his testimony. Defense counsel did not cross-examine Mr. Davis. The photograph of the infant victim was not gruesome. The infant was fully clothed and the eyes of the infant were shut. The infant appeared to be sleeping.

This issue is clearly without merit.

## III.

The appellant contends that the trial court committed error of prejudicial dimensions because the court refused to grant her special request for a jury instruction on voluntary intoxication. She argues that her intoxication was relevant to the issue of her culpable mental state. She asserts that the "culpable mental state required by the Tennessee vehicular homicide and vehicular assault statutes is that an accused 'knowingly' and 'voluntarily' engaged in the prohibited conduct." In the next breath, she states that these offenses do not require a specific intent. The state argues that the appellant was not entitled to an instruction on voluntary intoxication. As previously stated, the requisite culpable mental state in this case is "intentional."

### A.

 In this jurisdiction, "intoxication, whether voluntary or involuntary, is admissible in evidence if it is relevant to negate a culpable mental state." Tenn.Code Ann. § 39–11–503(a). However, voluntary intoxication is not a defense. Tenn.Code Ann. § 39–11–503(a). On the other hand, "involuntary intoxication is a defense ... if, as a result of the involuntary intoxication, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of the law allegedly violated." Tenn.Code Ann. § 39–11–503(c). The evidence in this case establishes that both Jost and the appellant voluntarily consumed alcoholic beverages.

In this case, the trial court permitted the appellant to admit evidence of the medication she took, the quantity of alcoholic beverages she consumed, and the effect the drugs and alcohol had upon her. There was no limitation placed upon the introduction of this evidence. The next question that this Court must resolve is whether the trial court should have given the appellant's special request.

**B.**

In criminal cases, the trial court has a duty, without request, to instruct the jury on the law applicable to the evidence adduced during the course of the trial and any issues that the jury must decide. *Poe v. State*, 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963); *see State v. Thompson*, 519 S.W.2d 789, 792 (Tenn.1975); *State v. Raines*, 882 S.W.2d 376, 382 (Tenn.Crim.App.), *per. app. denied* (Tenn.1994); *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn.Crim.App.1987); *State v. Elliott*, 703 S.W.2d 171, 179 (Tenn.Crim.App.), *per. app. denied* (Tenn.1985). The trial court is said to be "the proper source" from which the jury is to receive the law, and the court serves as a witness to the law applicable to the case. *State ex rel. Myers v. Brown*, 209 Tenn. 141, 148–49, 351 S.W.2d 385, 388 (1961); *Ford v. State*, 101 Tenn. 454, 458, 47 S.W. 703, 705 (1898).

While the jury is the judge of the facts and the law, it is the duty of the jury to apply the law contained in the charge of the trial court to the ultimate facts determined by the jury. *Ford*, 101 Tenn. at 458, 47 S.W. at 705. As the Supreme Court said in *Ford*:

> It is the duty of the court to direct the jury what the law is, and it is the duty of the jury to apply it, under the direction of the court, so far as he has directed, to the facts in evidence. They must treat it as applicable to the facts, and apply it as they determine the facts to be. The court is a witness to them what the law is, and the jury should adjudge it to be as given them. . . .

101 Tenn. at 458, 47 S.W. at 704.

Due to the importance of the trial court's charge on the role of the jury in reaching its decision, the accused "is entitled to a clear and distinct exposition of the law of his case as applicable to the facts." *Strady v. State*, 45 Tenn. (5 Cold.) 300, 307 (1868); *see Potter v. State*, 85 Tenn. 88, 98, 1 S.W. 614, 618 (1886); *Crawford v. State*, 44 Tenn. (4 Cold.) 190, 194 (1867); *Raines*, 882 S.W.2d at 382; *McAfee*, 737 S.W.2d at 308. In other words, the accused was "entitled to have the propositions of law governing . . . [her] case, plainly stated to the jury, in such a manner as to enable them to comprehend the principles involved." *Lancaster v. State*, 43 Tenn.

(3 Cold.) 339, 343 (1866). Nothing short of this will "satisfy the demands of justice," *Crawford*, 44 Tenn. at 195, or the accused's constitutional right of trial by jury. *State v. Staggs*, 554 S.W.2d 620, 626 (Tenn.1977); (quoting *Strader v. State*, 210 Tenn. 669, 682, 362 S.W.2d 224, 230 (1962)); *see Raines*, 882 S.W.2d at 382; *McAfee*, 737 S.W.2d at 308.

Since the culpable mental state of a person who aids and abets another in the commission of criminal offenses is intentional, the trial court should have included an instruction on intoxication as it pertained to the facts of this case. The trial court was required to include this instruction without being asked by a party to give a special request instructing the jury on the law of intoxication. The significance of intoxication, voluntary or involuntary, upon the ability of the appellant to formulate the specific intent was an issue that the jury was required to resolve in determining the appellant's guilt.

The next question that must be resolved is whether the trial court committed error in refusing to give the entire special request on intoxication.

**C.**

It is a well-established principle of law that a trial court is not required to incorporate a special request into the charge given the jury if it contains an erroneous statement of the law. *Harper v. State*, 206 Tenn. 509, 523, 334 S.W.2d 933, 939 (1960); *State v. Moffett*, 729 S.W.2d 679, 681 (Tenn.Crim.App.1986), *per. app. denied* (Tenn.1987); *State v. Hammonds*, 616 S.W.2d 890, 895 (Tenn.Crim.App.), *per. app. denied* (Tenn.1981); *Bolin v. State*, 4 Tenn.Cr.App. 387, 472 S.W.2d 232, 235, *cert. denied* (Tenn.1971). As this Court said in *Moffett*: "The defendant concedes that his special request for jury instruction inaccurately contained assault, an element not of the offense. The trial judge's refusal to give an inaccurate special charge is not reversible error . . . ." 729 S.W.2d at 681.

The special request submitted by the appellant did not address the correct culpable mental state. It incorporated the

culpable mental states of "knowing" and "reckless." It did not address "intentional" as a culpable mental state. Consequently, the special request did not incorporate a correct statement of law. As a result, the trial court properly refused to incorporate the request into the charge given to the jury.

This Court must now address whether the failure of the trial court to instruct the jury on intoxication constituted reversible error.

#### D.

■ As previously noted, the appellant's trial strategy was to establish that she was unconscious, Jost removed the keys from the appellant's purse and drove the motor vehicle without the appellant's knowledge or consent. In other words, she did not contend that her ability to formulate the requisite culpable mental state was impaired or she lacked the requisite culpable mental state because she was intoxicated. Thus, the crux of this case was whether the appellant was conscious and intentionally permitted Jost to operate her motor vehicle while under the influence of an intoxicant.

The evidence of the appellant's guilt is overwhelming. Those who saw the appellant shortly before she left the VFW Club described her as normal. She was able to sign and cash her pay check, spend several dollars playing a video game, and play pool. She admitted that she had the ability to perform these acts without difficulty or impairment. Two lay witnesses, who were following the appellant's vehicle, described how she interacted with Jost for several minutes before the fatal collision. Later, two officers talked to the appellant. She was conscious, alert, and responded to the questions asked by the officers. In addition, she had the presence of mind to refuse a blood alcohol test to determine the degree of her intoxication.

In the context of this case, the failure of the trial court to give an instruction on intoxication was harmless. Tenn.R.App.P. 36(b). The trial court instructed the jury on the culpable mental states defined by the applicable statute. Tenn.Code Ann. § 39–11–302. Thereafter, the trial court instructed the jury at the appellant's request that the state was required to prove beyond a reasonable doubt that the appellant "knowingly" permitted Jost to drive her motor vehicle. Furthermore, the giving of an instruction on intoxication would not have aided the jury in determining whether the appellant was unconscious when Jost allegedly took the keys from her purse and drove her car from the VFW Club. The determination of this fact issue was based exclusively upon the credibility of the witnesses.

This issue is without merit.

#### IV.

The appellant contends that the length of the sentences imposed by the trial court is excessive. She further contends that the trial court abused its discretion by refusing to impose an alternative sentence to incarceration.

#### A.

■ When an accused challenges the length and manner of serving a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Butler,* 900 S.W.2d 305, 311 (Tenn.Crim.App.1994); *State v. Smith,* 891 S.W.2d 922, 929 (Tenn. Crim.App.), *per. app. denied* (Tenn.1994); *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn. Crim.App.1993).

■ When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Commission Comments to Tenn.Code Ann. § 40–35–401 (1990); *Ashby,* 823 S.W.2d at 169; *Butler,* 900 S.W.2d at 311; *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn.Crim.App.1991).

## B.

The appellant contends that her sentence is excessive because the trial court erroneously used certain enhancing factors to increase her sentences within the appropriate range. She also argues that the trial court refused to reduce her sentences by using certain mitigating factors she contends are supported by the record. The trial court found that there were no mitigating factors established by the evidence adduced during the trial and the sentencing hearing.

### (1)

The trial court found that the record supported five enhancement factors. These factors were used to enhance the appellant's sentences within the appropriate range.

The trial court found that the appellant had a history of criminal behavior. Tenn. Code Ann. § 40–35–114(1). The appellant does not dispute this factor. The record established that the appellant had a prior conviction for driving while under the influence. In addition, she admitted driving while under the influence on the date in question.

The trial court also found that there were two criminal actors in this case, and appellant was a leader in the commission of these offenses. Tenn.Code Ann. § 40–35–114(2). This factor is supported by the record. When the appellant decided to go get her pay check, Jost asked if she could go with her. The appellant said she could go if she wanted to. The appellant drove to get the check, and, thereafter, drove to the VFW Club to get the check cashed. The appellant purchased alcoholic beverages for Jost while at the club. When they left the club, the appellant permitted Jost to drive her vehicle. However, the appellant, as the owner of the vehicle, was in complete control.

The trial court also found that the offenses involved more than one victim. Tenn.Code Ann. § 40–35–114(3). The state concedes that the trial court should not have applied this factor to enhance the sentences. This Court has held that this factor may not be applied to enhance a sentence when the appellant is separately convicted of the offenses committed against each victim. *State v. Makoka*, 885 S.W.2d 366, 373 (Tenn.Crim. App.), *per. app. denied* (Tenn.1994); *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn.Crim. App.1987). Thus, the trial court should not have used this factor to enhance the appellant's sentences.

The trial court found that the personal injuries sustained by the victims were particularly great. Tenn.Code Ann. § 40–35–114(6). Again, the state concedes that the trial court should not have applied this factor to enhance the sentences. This Court has consistently held that this factor should not be used to enhance a sentence for the offense of vehicular homicide because the death of the victim is an element of the offense. *State v. Norris*, 874 S.W.2d 590, 601 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1993); *Lambert*, 741 S.W.2d at 134. There are also numerous unreported opinions of this Court that support this rule. That the personal injuries sustained by the victims were particularly great is also an element of vehicular assault. *See State v. Jones*, 883 S.W.2d 597, 602 (Tenn.1994); *State v. Cecil Cook*, Loudon County No. 75, 1989 WL 22695 (Tenn.Crim.App., Knoxville, March 16, 1989). Thus, the trial court should not have used this factor to enhance the appellant's sentences within the appropriate range.

The trial court found that the appellant committed the crimes in question under circumstances where the potential for bodily injury to a victim was great. Tenn.Code Ann. § 40–35–114(16). The appellant contends that this factor should not have been used to enhance her sentence. The state argues that the trial court properly used this factor to enhance the sentences. This Court has consistently held that this factor should not be used to enhance a sentence for vehicular homicide. *Norris*, 874 S.W.2d at 601; *State v. Teri Melissa Bingham*, 910 S.W.2d 448 (Tenn.Crim.App., 1995); *State v. Jerome D. Upman*, Hamblen County No. 03–C–01–9402–CR–00052, 1994 WL 396355 (Tenn. Crim.App., Knoxville, August 2, 1994); *State v. Stanley R. Haskins*, Macon County No. 01–C–01–9307–CC–00243, 1994 WL 168701 (Tenn.Crim.App., Nashville, May 5, 1994). Also, this factor should not have been used to

enhance the sentence for vehicular assault given the facts in this case. *See Jones,* 883 S.W.2d at 603. As in *Jones,* the facts do not demonstrate "a culpability distinct from and appreciably greater than that incident to the offense for which [s]he was convicted." 883 S.W.2d at 603.

 The trial court should have applied enhancement factor (10), namely, she had no hesitation about committing the crime when the risk to human life was high, when sentencing the appellant. Tenn.Code Ann. § 40–35–114(10). The events in question occurred on Labor Day. There were more people using the roadway this day than on an average weekday. Two witnesses testified that the appellant's vehicle went across the center lane and into the opposing lane of traffic on more than one occasion prior to colliding with Mrs. Davis's vehicle. Thus, people other than the victims were subject to being injured by Jost and the appellant. *See Makoka,* 885 S.W.2d at 373.

### (2)

 The appellant contends that the trial court should have found four mitigating factors pursuant to Tenn.Code Ann. § 40–35–113(13). These factors include remorse, a self-initiated attempt to cure her alcoholism, voluntarily attending meetings for recovering alcoholics, and a willingness and ability to comply with the terms and conditions of intense probation. The trial court concluded that no mitigating factors were supported by the record.

This Court has previously held that genuine, sincere remorse is a proper mitigating factor. *State v. Buttrey,* 756 S.W.2d 718, 722 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1988). In this case, the remorse expressed by the appellant was neither genuine nor sincere. The appellant blamed Mrs. Davis for causing the accident. She blamed Mrs. Davis and Vanderbilt University Hospital for the death of the infant. She also issued a press release immediately following the trial declaring that she was not guilty and she did not have a fair trial. The trial court saw the appellant in person when she testified and made a determination as to her credibility. Obviously, the trial court did not believe that

the appellant had remorse. In short, the mere speaking of remorseful words or a genuflection in the direction of remorse will not earn an accused a sentence reduction.

 The appellant's attempt to overcome her addiction to alcohol and attendance at meetings is equally specious. The appellant waited for one year before she sought assistance. When she was released from inpatient care, she did not comply with the aftercare directions of the health care providers who treated her. Immediately after the jury found her guilty, the appellant went home and began drinking alcoholic beverages. The trial court observed that the appellant was under the influence of drugs when she testified at the sentencing hearing. The court noted that if the drugs were prescribed, it appeared that she was abusing the prescription drug. The trial court, having seen and heard the appellant, did not err by refusing to grant a reduction in her sentences on these grounds.

 The fact that the appellant was willing to comply with the terms and conditions of intensive probation is not an unspecified mitigating factor that should be used to reduce a sentence. Every person who seeks an alternative sentence states his or her willingness to comply with the terms and conditions of the alternative sentence. Moreover, if such a sentence is imposed, the sentence is contingent upon the accused complying with the terms and conditions of the sentence.

The trial court correctly held that there were no mitigating factors supported by the record.

### (3)

 While this Court has held that there are only three enhancement factors as opposed to five factors found by the trial court, this does not require a reduction in the sentences imposed by the trial court. *See State v. Keel,* 882 S.W.2d 410, 423 (Tenn.Crim. App.), *per. app. denied* (Tenn.1994). All of these factors are entitled to great weight in determining the length of the appellant's sentences. As previously stated, the appellant had been previously convicted of DUI and she admittedly operated her motor vehicle

that morning while under the influence. The appellant, as owner, had complete control over whether Jost operated the motor vehicle. Finally, there was a wealth of evidence that Jost crossed the center line of the roadway and almost caused several collisions before the collision with the Davis vehicle. However, the appellant did not ask Jost to pull to the side of the road so that she could assume control or call someone to come get them. There is overwhelming evidence that the appellant and Jost continually conversed while they proceeded on the journey of death. The appellant denies that she was awake. Obviously, the appellant never questioned Jost about the manner in which she was operating her motor vehicle. Thus, this Court concludes that the sentences imposed by the trial court were not excessive given the strength of the enhancement factors in this case.

### C.

■ If an accused has been convicted of a Class C, D or E felony and sentenced as an especially mitigated or standard offender, there is a presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. § 40–35–102 provides in part:

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

The sentencing process must necessarily commence with a determination of whether the accused is entitled to the benefit of the presumption. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991); *State v. Bonestel,* 871 S.W.2d 163, 167 (Tenn.Crim.App.1993). As the Supreme Court said in *Ashby:* "If [the] determination is favorable to the defendant, the trial court *must* presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption then it may sentence the defendant to confinement according to the statutory provision[s]." 823 S.W.2d at 169 (emphasis added).

■ While the appellant is entitled to the presumption in this case, the state successfully rebutted the presumption. Thus, the trial court did not abuse its discretion in refusing to impose an alternative sentence to incarceration.

The appellant was less than candid when she testified at the sentencing hearing. The state established that the appellant had made several prior inconsistent statements. Also, the appellant gave contradictory testimony during direct examination and cross-examination. The appellant admitted she issued a press release that falsely stated she had no prior involvement in criminal activity. The appellant was previously convicted of driving while under the influence, and she admitted using marijuana in the past. In short, her lack of candor is probative of her prospect for rehabilitation. *United States v. Grayson,* 438 U.S. 41, 50–52, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978); *State v. Neeley,* 678 S.W.2d 48, 49 (Tenn.1984); *State v. Dykes,* 803 S.W.2d 250, 259–60 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990).

The trial court correctly observed that the appellant was in a "state of denial." Although the evidence of the appellant's guilt was overwhelming, she continued to deny her guilt. During the sentencing hearing, she testified that she had not received a fair trial. She accused the prosecution witnesses, particularly those from the VFW Club, of lying when they testified at the trial. She also blamed Lisa Davis, a victim, of speeding and claimed she was the reason the accident happened. She blamed Vanderbilt University Hospital for the death of the fetus, and she claimed that the hospital should be investi-

gated for its conduct. She also blamed Mrs. Davis for the death of the fetus because Mrs. Davis wanted to postpone the operation until her private doctor arrived. Again, these views reflect upon the prospects of rehabilitation.

Although the appellant sought help for her dependency on alcohol, she waited for approximately one year before seeking help. She continued to abuse alcohol during this interim period. Once she completed the program, she failed to comply with the aftercare directions she received at the conclusion of the inpatient hospitalization. After the verdicts of guilt were returned by the jury, the appellant stated that she went home and began drinking. This also reflects upon her prospect for rehabilitation.

The trial court expressed the view that the appellant was abusing the medication she had been prescribed following her hospitalization. Once the sentencing hearing had concluded, the trial court stated:

> I want to make some comments initially as I begin the determination of this issue. I want to first comment on the demeanor and presentation of Ms. Williamson. I want ... the record to reflect that I specifically have found that Ms. Williamson has dozed off when her attorney was making his final summation, and her presentation and demeanor here today is one who is impaired. She's appeared sleepy, lethargic, tongue thickened, mumbling in her presentation, and she has dozed off regularly during the presentation of this particular hearing over this extended session. So I have strong feelings that if she is on medication, that [the] medication is probably being abused and results in her impaired ability as we are hearing this matter.

The appellant's appearance and conduct at the sentencing hearing also reflect upon her prospect for rehabilitation. It refutes the image projected by the defense that the appellant had overcome her alcohol and substance abuse, and she could be a model citizen in the future.

This issue is without merit.

WADE, J., and ALLEN R. CORNELIUS, Special Judge, concur.