IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## State of Tennessee v. Joe C. Anderson a/k/a Uncle Joe

**Direct Appeal from the Criminal Court for Loudon County
No. 9612    E. Eugene Eblen, Judge**

**No. E1999-02485-CCA-R3-CD
September 12, 2000**

Raising issues of sufficiency of the evidence and improper sentencing, Joe C. Anderson appeals from his conviction of second degree murder in the Loudon County Criminal Court.  Because we discern no error requiring reversal, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Joseph R. Ford, Loudon, Tennessee, Kenneth F. Irvine, Jr., Knoxville, Tennessee (on appeal) Alfred Hathcock and Walter Johnson, Assistant District Public Defenders (at trial), for the appellant, Joe C. Anderson.

Paul G. Summers, Attorney General & Reporter, Mark A. Fulks, Assistant Attorney General, Charles E. Hawk, District Attorney General, Scott McCluen and Frank Harvey, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

Joe C. Anderson appeals from his conviction of the second degree murder of Kevin Angel.  Anderson was convicted at the conclusion of a jury trial in the Loudon County Criminal Court.  He is presently serving a twenty-year sentence in the Department of Correction for this crime.[1]  In this direct appeal, he challenges the sufficiency of the evidence and the length of the sentence imposed.  Upon review, we hold that the evidence sufficiently supports the defendant's conviction.  Although we agree with the defendant that the trial court failed to make appropriate findings justifying the sentence imposed, we conclude that the trial court reached an appropriate result on the facts of this case. Accordingly, we affirm the judgment of the trial court.

---

[1] Anderson is serving additional time for various drug convictions which are not the subject of this appeal.

In the light most favorable to the state, the victim came to the defendant's home on the evening of September 7, 1997. The victim had been "a startin' trouble" at the defendant's shop in the preceding days,[2] so the defendant got his gun. Two of the defendant's houseguests attempted to keep the victim from coming inside the defendant's trailer home. The victim had a "four foot level" and said to the defendant, "[C]'mon out here ole man I'm gonna whop you this time." The defendant claimed, "I just took all I could take."

The victim and the defendant argued for ten to fifteen minutes inside the trailer, until the defendant told one of his houseguests to "call the law." The victim became upset and said that the authorities would take his truck because he had no driver's license. The defendant told the victim he was going to lose everything. The victim went outside and started beating the defendant's sportscar with the level. The defendant followed the victim outside and began shooting. Three shots struck the defendant's sportscar, a truck, and the victim. According to the defendant, the second or third shot was the one which struck the victim. The shot entered the victim's back, perforated both lungs, lacerated the aortic arch and trachea, and exited his chest. The wound was fatal.

When Detective Jonathan Sartin of the Lenoir City Police Department arrived at the scene, the victim was already loaded into an ambulance, and the defendant and his houseguests had been restrained to preserve the crime scene. Detective Sartin described the defendant as "kind of mad because of what had happened." However, when specifically asked, Sartin denied that the defendant was tearful, crying, enraged, screaming, hollering, red-faced or breathing hard. On cross-examination, Detective Sartin acknowledged that the victim had a propensity to be violent and aggressive. In a prior encounter, the victim had injured Detective Sartin, spit in Sartin's police dog's face, and warped a screen inside Sartin's patrol car through physical violence.

Doctor Sandra Elkins, who performed an autopsy of the victim, testified to the manner of death. She also testified that the victim's blood-alcohol content was .15, and he was legally intoxicated.

The defendant chose not to present evidence.

The jury found the defendant guilty of the charged offense of second degree murder. At a later sentencing hearing, the trial court imposed an incarcerative sentence of twenty years.

# I

The defendant's first issue challenges the sufficiency of the convicting evidence. He claims that once the issues of self-defense and "passion" were raised, the state failed to disprove the existence of these elements beyond a reasonable doubt. In essence, the defendant argues that he is guilty of nothing because he acted in self-defense, and alternatively, that he is guilty of no greater crime than voluntary manslaughter.

---

[2]Apparently, the 26-year-old victim and the 59-year-old defendant did not get along because they dated the same woman.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The defendant was convicted of second degree murder, which is the "knowing killing of another." See Tenn. Code Ann. § 39-13-201(a)(1) (1997).

In contrast, the crime of voluntary manslaughter "is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (1997).

The law of self-defense provides

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds.

Tenn. Code Ann. § 39-11-611(a) (1997).

**A.      Second Degree Murder or Voluntary Manslaughter**

The facts of this case establish that the defendant knowingly killed the victim. When the victim came to the defendant's house, the defendant retrieved his gun. He argued with the victim, and when the victim exited the defendant's home and began beating on the defendant's car with a level, the defendant fired multiple shots at the victim, one of which struck the victim.

Nonetheless, the defendant claims that the state's evidence raised the issue of "passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner," thereby establishing voluntary manslaughter. The evidence established that the defendant and the victim had a history of conflict, that the victim threatened to "whop" the defendant on the night of the crime, that the defendant and the drunk victim argued immediately prior to the crime, and that the defendant was still mad over the situation when Detective Sartin arrived after the shooting. Ultimately, however, it for the jury to determine whether this evidence established "passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." The jury determined that this evidence did not rise to the level of passion required for voluntary manslaughter. Upon review, we conclude that a rational jury could reach this conclusion based upon the evidence of record. Obviously, in weighing and evaluating the evidence, the jury determined that the defendant was not sufficiently provoked by the victim's actions and threats and/or that a reasonable person would not kill another over property damage and threats of violence. Such was within the jury's province as the trier of fact. See State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim App. 1995) (whether the defendant's acts "constitute a 'knowing killing' (second degree murder) or a killing due to 'adequate provocation' (voluntary manslaughter) is a question for the jury"); State v. Keels, 753 S.W.2d 140, 143 (Tenn. Crim. App. 1988) (issue of degree of homicide is for the jury to decide in view of all of the facts of the case).

## B.    Self-Defense

The defendant also claims that the state's evidence fairly raised the issue of self-defense and that the state failed to disprove that the shooting was in self-defense. The defendant is correct that he has no burden of establishing the defense once its existence is fairly raised; rather, the state carries the burden of proof to negate the defense. See State v. Belser, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996). The state must negate the defense to the crime beyond a reasonable doubt. Tenn. Code Ann. § 39-11-201(a)(3) (1997); Belser, 945 S.W.2d at 783. Whether the state has met its burden is a question for the jury to determine. State v. Fred Edmond Dean, No. 03C01-9508-CC-00251, slip op. at 10 (Tenn. Crim. App., Knoxville, Jan. 10, 1997), perm. app. denied (Tenn. 1997); State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

These principles afford the defendant no relief, however. The evidence demonstrates that the victim came to the defendant's home armed with a level, threatened to "whop" the defendant, argued with the defendant, and vandalized the defendant's car. There is also evidence, however, that the victim left the defendant's home after the argument and was in the process of vandalizing the defendant's car when he was shot in the back. The defendant, furthermore, had asked a houseguest to call law enforcement to handle the situation. The jury's task as finder of fact required it to assign weight and value to all of the evidence. In so doing, the jury obviously found

that the state negated the defendant's claim of self-defense. Viewing the evidence in the light most favorable to the state, we see no error. Rational jurors could find, based upon the evidence of record, that force was not immediately necessary, that there was no imminent danger of death or serious bodily injury, and/or that the belief of imminent death or serious bodily injury was not real, or not honestly believed, and not founded upon reasonable grounds. See Keels, 753 S.W.2d at 143 (issue of self-defense is for the jury to decide in view of all of the facts of the case).

The evidence sufficiently supports the defendant's conviction of second degree murder.

## II

The defendant's remaining challenge is to the propriety of his twenty-year sentence. He claims that the sentence is too lengthy given the presence of several mitigating factors and the state's failure to advance any enhancement factors at the sentencing hearing.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the present case, the trial court summarily announced that the sentence would be twenty years without acknowledging the sentencing principles and making appropriate findings based upon the facts and circumstances of the case. Accordingly, our review of the trial court's sentencing determination is *de novo* unaccompanied by the presumption of correctness.

## A. Enhancement Factors

Our review of the statutory enhancement factors reveals two that apply on the facts of this case. "The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (1997). In his brief, the defendant concedes the applicability of this factor. We afford it substantial weight, particularly in light of three prior convictions for assault and over 30 alcohol-related offenses.

Second, the defendant employed a firearm during the commission of the offense. See Tenn. Code Ann. § 40-35-114(9) (1997). Use of a firearm is not an element of second degree murder. See generally Tenn. Code Ann. § 39-13-210 (1997). Thus, the defendant's sentence is properly enhanced with this factor. See, e.g., State v. Raines, 882 S.W.2d 376, 385 (Tenn. Crim. App. 1994). We afford it moderate weight.

The state advances two additional enhancement factors, which we reject. First, the state argues that the defendant committed the crime without hesitation despite the high risk to human life. See Tenn. Code Ann. § 40-35-114(10) (1997). This factor is ordinarily inapplicable to the crime of second degree murder. See, e.g., State v. Butler, 900 S.W.2d 305, 314 (Tenn. 1994). It may be applied, however, where the risk is to the life of someone other than the homicide victim. See, e.g., State v. Johnson, 909 S.W.2d 461, 464 n.1 (Tenn. Crim. App. 1995). In the present case, there is evidence that others were present; however, the record is devoid of evidence that they were in a zone of danger. The defendant's houseguests appear to have been inside the defendant's trailer during the shooting, which took place outside. See State v. Samuel D. Braden, No. 01C01-9610-CC-00457, slip op. at 10-11 (Tenn. Crim. App., Nashville, Feb. 18, 1998) (factor (10) did not apply where defendant's children were inside house when defendant shot victim in carport area). Thus, we reject this enhancement factor.

The state also advances the enhancement of the defendant's sentence for commission of the offense while the defendant was on bail for another felony. See Tenn. Code Ann. § 40-35-114(13)(A) (1997) (enhancement appropriate if defendant committed offense while on bail "if the defendant is ultimately convicted of such prior felony"). In its brief, the state recites that the defendant was arrested on December 14, 1997 and May 29, 1998 for felony drug offenses. However, this offense occurred on September 7, 1997, before those arrests took place. Thus, it would be impossible for the defendant to have been on bail for the drug offenses at the time he murdered the victim. This enhancement factor does not apply.

## B. Mitigating Factors

The defendant advocates the application of seven mitigating factors:
1. The defendant acted under strong provocation;
2. Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

3. The defendant, because of youth or old age, lacked substantial judgment in committing the offense;

4. The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;

5. The defendant has significant health problems;

6. The defendant expressed remorse about the victim's death;

7. The defendant served in the military and received an honorable discharge.

Tenn. Code Ann. § 40-35-113(2), (3), (6), (11), (13) (1997).

We are unconvinced that the defendant's sentence should be mitigated because he acted under strong provocation. See Tenn. Code Ann. § 40-35-113(2) (1997). The defendant's response to the situation was uncalled for and excessive. There is no indication that the victim did anything so inflammatory that the defendant was strongly provoked into his course of action. We decline to apply this mitigating factor.

Likewise, we see no substantial grounds tending to excuse or justify the defendant's criminal conduct. See Tenn. Code Ann. § 40-35-113(3) (1997). We acknowledge that the victim and the defendant did not get along and argued just prior to the offense, that the victim threatened to "whop" the defendant, and that the victim was in the process of vandalizing the defendant's sportscar when he was shot. However, absolutely nothing of record even remotely justifies the defendant's excessive response to the situation. The defendant did not wait for law enforcement officers to arrive to handle the situation. The victim was engaged in acts of property damage and was not threatening human life or health when the defendant shot him.

We likewise reject the defendant's contention that his sentence should be mitigated because he lacked substantial judgment due to advanced age. See Tenn. Code Ann. § 40-35-113(6) (1997). There is nothing of record to establish that the defendant, who was 59 at the time of the offense, had any age-related lack of substantial judgment at the time of the offense.

Similarly, we decline to mitigate the defendant's sentence based upon commission of the offense under such unusual circumstances that it is unlikely that he had a sustained intent to violate the law. See Tenn. Code Ann. § 40-35-113(11) (1997). The defendant has three prior convictions for assault. Mitigation would be inappropriate here, as it appears the defendant has a history of physical violence against others.

The defendant argues for mitigation based upon his significant health problems. According to the presentence report, the defendant has a history of two heart attacks and one stroke. Code section 40-35-113(8) allows for mitigation where a defendant's mental or physical condition significantly reduces the defendant's culpability for the offense; however, the defendant argues that mitigation for ill health should be applied to him under section 40-35-113(13), the so-called "catchall" factor. Compare Tenn. Code Ann. § 40-35-113(8) (1997) with Tenn. Code Ann. § 40-35-

113(13) (1997). The record does not support mitigation under subsection (8); there is no evidence of record that the defendant's physical infirmities played any role in his offense. Furthermore, the defendant has failed to carry his burden of establishing why this factor should otherwise be applied as a function of section 40-35-113(13). See State v. Anthony Raymond Bell, No. 03C01-9503-CR-00070, slip op. at 7 (Tenn. Crim. App., Knoxville, Mar. 11, 1996) (mitigation for ill health rejected under factors (8) and (13)).

The defendant also argues for mitigation based upon his showing of remorse. See Tenn. Code Ann. § 40-35-113(13) (1997). The defendant offered a letter, the substance of which read, "I am sorry that Kevin Angel is dead. My sister, Louis Price, and I helped raise Kevin. I knew him since he was a boy. The events of September 7, 1997 are on my mind twenty-four hours a day." This court has recognized that genuine, sincere remorse is a proper basis upon which to mitigate a defendant's sentence. State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). However, "the mere speaking of remorseful words or a genuflection in the direction of remorse will not earn an accused a sentence reduction." Id. In the present case, we find that the defendant's cursory letter carries the burden of establishing this mitigating factor only marginally, if at all. Accordingly, we afford it very slight weight.

Finally, the defendant seeks mitigation based upon his prior military service, which culminated in an honorable discharge. The record does, indeed, reflect that the defendant served honorably in the Navy for over four years. This is a proper basis for mitigation. See, e.g., State v. Vincent Gerrard Overton, No. 02C01-9510-CC-00303, slip op. at 5 (Tenn. Crim. App., Jackson, June 2, 1997), perm. app. denied (Tenn. 1998). We afford this factor moderate weight.

## C. Sentencing Determination

Thus, the defendant has two enhancement factors and two mitigating factors. In making a sentencing determination for a Class A felony, the sentencing court must start at the midpoint of the applicable range. State v. Chance, 952 S.W.2d 848 (Tenn. Crim. App. 1997); see Tenn. Code Ann. § 40-35-210(c) - (e) (1997) (amended 1998).

In the present case, given the greater weight of the enhancement factors in contrast to the lesser weight of the mitigating factors, the trial court's mid-range sentence of twenty years was generous to the defendant. Accordingly, we affirm the length of the defendant's sentence.

_____
JAMES CURWOOD WITT, JR., JUDGE