IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2001

## STATE OF TENNESSEE v. AUGUSTO OVIEDO

**Appeal as of Right from the Criminal Court for Shelby County**
**No. 99-02839      Joseph B. Dailey, Judge**

_____

**No. W2000-01003-CCA-R3-CD  - Filed July 20, 2001**

_____

The appellant, Augusto Oviedo, was convicted by a jury in the Shelby County Criminal Court of robbery and was sentenced as a Range III persistent offender to fifteen years incarceration in the Tennessee Department of Correction.  On appeal, the appellant raises the following issues for our review: (1) whether the evidence in this case is sufficient to sustain his conviction, and (2) whether the trial court failed to fully consider all mitigating factors when it sentenced the appellant to the maximum in the range for the crime.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

A.C. Wharton, Josh Spickler, and Gregory Carman, Memphis, Tennessee, for the appellant, Augusto Oviedo.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On September 17, 1998, the victim, Betty Montgomery, was staying at the Mariott Hotel in Memphis, Tennessee, where her husband was attending a "southern labor management conference." While her husband was attending classes relating to the conference, Montgomery spent some time sitting beside the hotel pool.  On the way back to her room, the appellant followed Montgomery into the hotel elevator.  The appellant continued to follow Montgomery as she left the elevator and proceeded down the hall to her room.  When Montgomery opened the door to her room, the appellant shoved her inside.

As the appellant engaged the deadbolt lock on the hotel room door, Montgomery screamed at the appellant, "What are you doing in this room?" Montgomery then ordered the appellant to leave. The appellant "snatched" Montgomery's purse from her shoulder, breaking the purse strap and causing the purse to fall to the floor. The appellant then grabbed Montgomery by the arm and ordered her to stop screaming. Switching his hold to the back of her neck, the appellant warned Montgomery, "Lady, I have a knife. Don't make me hurt you." While holding Montgomery, the appellant retrieved Montgomery's wallet from her purse, which had fallen to the floor. He took all of the cash from the wallet, which amounted to between $60 and $80. The appellant asked for the rest of Montgomery's cash, and she informed him that was all the money she had. Before leaving the room, the appellant cautioned Montgomery, "If you [call the police], I'll come back and kill you."

After the appellant left, Montgomery locked the door and promptly called hotel security. Due to the amount of time she had spent with the appellant, Montgomery was able to thoroughly describe the appellant's clothing to the authorities. She noted that the appellant was wearing "a baseball jersey with an ivory background with a red pinstripe and dark green jeans." She also told the police that the appellant was Hispanic and talked with an Hispanic accent.

The next day, Officer Thomas McCrogan of the Memphis Police Department observed the appellant near "Third and Union." The appellant matched the description given by Montgomery and was wearing clothing that was identical to that described by Montgomery. Accordingly, Officer McCrogan arrested the appellant.

Sergeant Jeff Polk of the Memphis Police Department met with Montgomery on September 20, 1998, and asked her to examine a photographic line-up that included a picture of the appellant. Sergeant Polk explained to Montgomery that the perpetrator might not be pictured in the line-up. Upon seeing the photographic array, Montgomery immediately identified the appellant as the person who robbed her.

The appellant was indicted and tried for the robbery of Montgomery. A jury in the Shelby County Criminal Court convicted the appellant of robbery, a class C felony. At the sentencing hearing, the State adduced proof of the appellant's lengthy criminal record, his previous probation violations, and his previous parole revocation. In mitigation, the appellant testified regarding his epilepsy and his manic depression, both of which are controlled with prescription medication. Additionally, the appellant apologized to Montgomery and to the court for making the State proceed to trial in this matter. After considering the evidence, the trial court sentenced the appellant as a Range III persistent offender to the maximum sentence of fifteen years incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction and, in the alternative, contests the length of his sentence.

## II. Analysis
### A. Sufficiency of the Evidence

When analyzing an appellant's challenge to the sufficiency of the evidence supporting his conviction, this court generally grants considerable weight to the verdict of a jury in a criminal trial. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In fact, a jury conviction essentially removes the presumption of the appellant's innocence and replaces it with a presumption of guilt. State v. Suttles, 30 S.W.3d 252, 260 (Tenn.), cert. denied, __ U.S. __, 121 S. Ct. 401 (2000). Accordingly, the appellant bears the burden of demonstrating to this court why the evidence will not support the jury's findings. Id. In order to meet this burden, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense in question beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Moreover, on appeal, the State, as the prevailing party in the trial court, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cottrell, 868 S.W.2d 673, 675 (Tenn. Crim. App. 1992). Additionally, we note that "[t]he weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact." State v. Manning, 909 S.W.2d 11, 13 (Tenn. Crim. App. 1995).

To obtain the appellant's conviction of robbery, the State was required to prove the elements of the offense as contained in the indictment:
> [T]hat . . . AUGUSTO OVIEDO on September 17, 1998, . . . did unlawfully , knowingly, and by violence, obtain from the person of BETTY MONTGOMERY, a sum of money, all under the value of five hundred dollars. . . in violation of [Tenn. Code Ann. §] 39-13-401. . . .

We note that the offense of robbery is defined in Tenn. Code Ann. § 39-13-401 (1997) as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." In the instant case, the State was required to prove that the appellant committed the robbery "by violence," the method alleged in the indictment. See State v. Fitz, 19 S.W.3d 213, 215 (Tenn. 2000).

As set forth in the summary of the facts, Montgomery testified that the appellant shoved her into her room, grabbed her by the arm and then by the neck, threatened her with a knife, and took her money. See id.; see also State v. Edwards, 868 S.W.2d 682, 700 (Tenn. Crim. App. 1993). Additionally, Carl Perkins, another guest at the hotel, testified at trial that he saw the appellant exit the elevator directly behind Montgomery and watched the appellant follow her to her room. Perkins maintained that, even though Montgomery never acknowledged the appellant's presence, they were walking so closely that it appeared as if they were together. However, Perkins also testified that soon after the appellant and Montgomery entered the room, he heard Montgomery yell "What in the hell are you doing in my room? What are you doing here? Get out of my room."

The appellant did not present any proof at trial. However, the questions asked by defense counsel suggested to the jury that the appellant had drinks with Montgomery by the pool, and that she invited him to her room where she gave him money to purchase drugs. Montgomery

vehemently denied these allegations at trial and asserted that she had never met the appellant before he shoved his way into her hotel room. In his brief, the appellant essentially argues that the jury erred in negating his version of events, as conveyed by his attorney, and in accrediting the State's theory of events. However, we are not entitled to substitute our judgment for that of the jury. See State v. Jackson, 814 S.W.2d 740, 742-743 (Tenn. Crim. App. 1991). Accordingly, we conclude that a reasonable jury, after considering the facts adduced at trial, could have found the appellant guilty beyond a reasonable doubt of the offense of robbery. State v. Ball, 987 S.W.2d 859, 861 (Tenn. Crim. App. 1998). This issue is without merit.

## B. Sentencing

This court will conduct a de novo review of the length of the appellant's sentence. Tenn. Code Ann. § 40-35-401(d) (1997). However, in conducting this de novo review, if the record reveals that the trial court properly considered the sentencing principles and all relevant facts and circumstances, this court will grant the trial court's determinations a presumption of correctness. Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In any event, the burden remains on the appellant to demonstrate the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Because it appears from the record that the trial court adequately considered the sentencing principles, we will conduct our analysis with the presumption that the trial court's findings are correct.

In the course of our review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (2000 Supp.); see also Ashby, 823 S.W.2d at 168.

We begin our analysis by turning to Tenn. Code Ann. § 40-35-210, which provides:
(c) The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. . . .
(d) Should there be enhancement but no mitigating factors for a Class B, C, D or E felony, then the court may set the sentence above the minimum in that range but still within the range.
We note that the appellant does not contest his classification as a Range III persistent offender, and, after examining the record, we agree. See Tenn. Code Ann. § 40-35-107(a)(1) (1997). Accordingly, because the appellant was convicted of a class C felony and was sentenced as a Range III persistent offender, the applicable range of punishment is "not less than ten (10) nor more than fifteen (15) years." Tenn. Code Ann. § 40-35-112(c)(3) (1997).

In sentencing the appellant, the trial court found that the following enhancement factors apply to the appellant: (1) the appellant has a previous history of criminal convictions or

criminal behavior in addition to those necessary to establish the appropriate range, and (8) the appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Tenn. Code Ann. § 40-35-114(1) and (8) (1997).

At the sentencing hearing, the State entered the appellant's pre-sentence report into evidence. The appellant testified that the information within the report is accurate. Contained in the report, as noted by the trial court, is the appellant's history of more than one hundred arrests, most of which resulted in conviction. This egregious criminal history more than qualifies for the application of enhancement factor (1). See State v. Green, 947 S.W.2d 186, 189 (Tenn. Crim. App. 1997); State v. Robert Strickland, No. 03C01-9801-CC-00556, 1999 WL 84013, at *4 (Tenn. Crim. App. at Knoxville, January 15, 1999). Notably, the trial court found that, in the appellant's case, enhancement factor (1) "has been satisfied probably more thoroughly or to a greater extent than any case I've ever seen." We conclude that the trial court appropriately considered this enhancement factor in sentencing the appellant.

Next, the trial court noted that, on numerous occasions in the past, the appellant has engaged in behavior resulting in a parole revocation or a probation violation. In fact, since 1988, the appellant has had one parole revocation and three probation violations. See State v. Adams, 973 S.W.2d 224, 230 (Tenn. Crim. App. 1997). We agree that this demonstrates a "previous history of unwillingness to comply with the conditions of a sentence involving release into the community." Tenn. Code Ann. § 40-35-114(8).

However, the appellant complains that the trial court erred in "fail[ing] to consider two lawful mitigating factors." First, the appellant contends that the trial court failed to consider his epilepsy and manic depression in mitigating his sentence. Specifically, the appellant argues that State v. Deborah Leigh Goins, No. M1998-00758-CCA-R3-CD, 2000 WL 218206, at *10 (Tenn. Crim. App. at Knoxville, February 25, 2000), perm. to appeal denied, (Tenn. 2000), authorizes the trial court to take his medical infirmities into consideration in sentencing.

In Goins, the defendant was convicted of leaving the scene of an accident involving a death. Id. at *1. The defendant contended that she was frightened by the victim's aggressive driving and was not thinking clearly due to a migraine headache. Id. at **3-4. After the accident, the defendant left the scene, reported that an accident had occurred, washed the victim's blood off of her car, and went home to take her migraine medicine. Id. at *4. The defendant returned to the scene approximately half an hour later. Id. at *4. The trial court ultimately concluded, and this court agreed, that the defendant's migraine headache was a "physical condition that significantly reduced her culpability for the offense." Id. at *10; see Tenn. Code Ann. § 40-35-113(8) (1997).

The appellant argues that, likewise, in mitigating his sentence the trial court should have considered that the appellant suffers from manic depression and epilepsy. However, unlike the defendant in Goins, the appellant did not present any proof at trial of how his medical infirmities reduced his culpability in committing the robbery of Montgomery. Accordingly, the trial court did not err in refusing to mitigate the appellant's sentence by applying mitigating factor (8). See Tenn.

Code Ann. § 40-35-113(8); State v. Anthony Raymond Bell, No. 03C01-9503-CR-00070, 1996 WL 103765, at *3 (Tenn. Crim. App. at Knoxville, March 11, 1996).

The appellant appears to argue that the trial court should have also considered his manic depression and his epilepsy under Tenn. Code Ann. § 40-35-113(13), the "catchall provision," which states that the trial court may mitigate a sentence based upon "[a]ny other factor consistent with the purposes of this chapter." However, we again note that the appellant failed to introduce any evidence of how or why his medical condition should be considered in mitigation. See State v. Joe C. Anderson, No. E1999-02485-CCA-R3-CV, 2000 WL 1285258, at *6 (Tenn. Crim. App. at Knoxville, September 12, 2000), perm. to appeal denied, (Tenn. 2001); see also State v. Graylin Burton, No. M1999-01997-CCA-R3-PC, 2001 WL 166361, at *3 (Tenn. Crim. App. at Nashville, February 16, 2001). In fact, this court has previously found that

> [generally], special consideration in sentencing because of ill health frustrates the purpose of the Act, to prevent crime and promote respect for the law by providing an effective general deterrent to those likely to violate the criminal laws of this state.

Bell, No. 03C01-9503-CR-00070, 1996 WL 103765, at *3. Moreover, the appellant testified at the sentencing hearing that his ailments are controlled by prescription medication. Therefore, we agree with the trial court that this factor is not applicable.

The appellant also argues that the trial court, pursuant to Tenn. Code Ann. § 40-35-113(13), should have considered his remorse. However, the record reflects that the trial court did consider the appellant's apologies to the victim and to the court but discounted the apologies as being "hollow." Although an "expression of remorse may be a solid basis for a successful rehabilitation, there is no requirement that [remorse automatically be] included among the mitigating factors set out in the catchall provision of Tenn. Code Ann. § 40-35-113(13)." State v. Barry Waters Rogers, No. M1999-01358-CCA-R3-CD, 2000 WL 1336488, at *6 (Tenn. Crim. App. at Nashville, September 15, 2000), perm. to appeal dismissed, (Tenn.), appeal denied, (Tenn. 2001). Moreover, this court has previously found that

> "Genuine, sincere remorse is a proper mitigating factor." While remorse is a relevant concern, "the mere speaking of remorseful words or a genuflection in the direction of remorse will not earn the accused a sentence reduction." The trial judge saw the [appellant], listened to [his] testimony, and observed [his] demeanor and concluded that this mitigating factor did not apply.

State v. Patricia Spencer, No. W1999-00030-CCA-R3-CD, 2000 WL 279696, at *4 (Tenn. Crim. App. at Jackson, March 6, 2000) (citation omitted) (quoting State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995)); see also Burton, No. M1999-01197-CCA-R3-PC, 2001 WL 166361, at *3. Accordingly, we conclude that the trial court did not err in failing to mitigate the appellant's sentence based upon his apologies during the sentencing hearing. Thus, because the trial court found the existence of two strong enhancement factors and found no mitigating factors, the trial court correctly sentenced the appellant to fifteen years incarceration.

### III.  Conclusion
Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE