IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2004

## STATE OF TENNESSEE v. MALCOLM BENSON

**Appeal from the Circuit Court for Lake County
No. 02-CR-8247     R. Lee Moore, Jr., Judge**

---

**No. W2003-02211-CCA-R3-CD  - Filed August 12, 2004**

---

Following a jury trial on April 23, 2003, the defendant was convicted of one count of sale of a controlled substance more than .5 grams.  He was sentenced to ten years in the Tennessee Department of Correction and fined $3000.  He appeals this conviction.  The defendant argues two issues: (1) whether the evidence was sufficient to support the defendant's conviction; and (2) whether the trial court erred by not allowing the defendant's uncle to testify at trial as to the identity of an individual in the videotape of the drug sale.  We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and JAMES CURWOOD WITT, JR., JJ., joined.

Ramsdale O'DeNeal, Jr., Jackson, Tennessee, for the appellant, Malcolm Benson.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and Phillip Bivens, District Attorney General,  for the appellant, State of Tennessee.

## OPINION

Factual Background

There were several witnesses at the defendant's trial.  The first witness was Special Agent Brian Eaton.  Agent Eaton is a forensic scientist for the Tennessee Bureau of Investigation ("TBI").  He testified that he received a cocaine base sample which weighed .68 grams in his laboratory.  He also stated that there were seven rocks of cocaine in the sample.

The next witness for the State was Agent Robert Harrison who works for the West Tennessee Judicial Violent Crime and Drug Task Force ("West Tennessee Drug Task Force").  In the Fall of

2001, Chief Bryan Avery of the Tiptonville Police Department, contacted Agent Harrison for assistance with an undercover drug operation. On November 30, 2001, Agent Harrison met with Agent Eric Holmes at a prearranged location. Agent Harrison gave Agent Holmes $120 to make a drug purchase and equipped Agent Holmes' vehicle with both audio and video surveillance equipment. Agent Holmes left the meeting sight around 2:45 p.m. During the purchase, at approximately 3:00 p.m., Agent Harrison was in a plain, unmarked vehicle with Chief Avery. Agent Harrison and Chief Avery could not see, but could hear, the transaction as it occurred. After the completion of the sale, Agent Holmes broadcast a description of the buyer as a black male, thin build, blue pants, blue jean coat, light mustache, cap and hood, tall, 5'9 or 5'10, and approximately 150 pounds. Having heard the description, Agent Harrison and Chief Avery circled through the area and saw an individual matching the description. The individual was later identified as the defendant. Chief Avery was familiar with the defendant and was able to identify him. Agent Harrison and Chief Avery then got a picture of the defendant from the Department of Safety database, and Agent Holmes identified the defendant as the buyer. Agent Harrison did state that the defendant's hair at the time of the trial was different from that of the picture obtained from the Department of Safety database. Agent Holmes gave Agent Harrison the drugs at 3:10 p.m. Agent Harrison field tested the substance, and it tested positive for cocaine. The drugs arrived at the TBI lab on December 5 for more extensive testing.

The next witness was Agent Holmes. Agent Holmes testified that he worked for the West Tennessee Drug Task Force as a special agent. He was involved with some undercover work in Lake County. On the day in question, Agent Holmes was approached by a black male on the passenger's side of the vehicle. The black male then came around to the driver's side of the vehicle. Agent Holmes asked the black male for seven rocks, meaning crack cocaine. The black male said yes he would deal with Agent Holmes. Agent Holmes then asked for seven rocks for $120. The two men completed the deal. Agent Holmes never left the vehicle. Agent Holmes testified that the vehicle was equipped with surveillance equipment. There were four concealed cameras, two shooting the passenger's side and two shooting the driver's side. He also stated that the individual who sold him the drugs was right up in his window. He then identified the defendant as the individual who sold him the drugs and stated that the defendant's hair had changed since the buy. Agent Holmes also stated he left the buy and went to meet the surveillance team, Agent Harrison and Chief Avery and turned over the substance he bought. Agent Holmes said he then viewed a photograph of the defendant and identified him as the individual from whom he purchased the cocaine.

The State's next witness was Chief Bryan Avery of the Tiptonville Police. Chief Avery testified that he contacted the West Tennessee Judicial District Task Force and asked for help with an operation. On November 30, 2001, Chief Avery was taking notes as part of a back-up team. He heard a transmission over the radio of what appeared to be a drug sale. After the sale was completed Chief Avery and Agent Harrison drove around to see if they could find an individual matching the description given by Agent Holmes. Chief Avery and Agent Harrison drove around less than one minute after the buy and at about ten miles per hour. They saw two people that Chief Avery was able to identify, Malcolm Benson and Edward Frison. At the time of the defendant's trial, Chief

Avery had known Malcolm Benson for seven or eight years. Mr. Benson and Mr. Frison were not dressed similarly on the day in question.

The defendant then presented his case. As his first witness he recalled Agent Harrison. Agent Harrison testified that he had seen the videotape of the sale which was admitted into evidence. He stated that the tape had been in the possession of the State since the time of the drug purchase. Agent Harrison stated that the videotape contains two views because drug dealers had figured out that there were cameras pointed at the driver's side of the car and knew to go to the passenger's side.

The next witness was the defendant himself. The defendant testified that he was twenty-two and that he lived with his mother and his sister. He stated that he had a prior conviction for possession of cocaine less than .5 grams. The defendant stated he had seen the videotape ten to fifteen times and the individual in the video was not him. The defendant described himself as 6'1", weighing 170 pounds and was about the same height and weight on the day in question. He also testified that he had never owned a blue jean jacket or the type of hat described by Agent Holmes. The defendant stated that he worked the third shift at Poly One and came home after work , sleeping until 4:00 or 5:00 o'clock.

The defendant's mother also testified at the trial. She stated that she remembered November 30, 2001 because of a party being thrown at her church. She testified that she remembered the defendant at home asleep at 3:00 p.m. that day.

The jury viewed the videotape of the sale as part of the evidence in addition to the foregoing testimony.

## ANALYSIS
### Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim.

App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

The jury found the defendant guilty of sale of a controlled substance more than .5 grams. Tennessee Code Annotated section 39-17-417 states that an individual is guilty of this crime when he knowingly sells a controlled substance and that substance weighs more than .5 grams. We conclude that the evidence as presented through the testimony of the State's witnesses and the videotape of the drug sale is more than adequate to support the defendant's conviction. There is no question that a rational trier of fact could find the defendant guilty of sale of a controlled substance more than .5 grams.

Therefore, this issue is without merit.

## Lay Testimony

The defendant's second issue is that the trial court erred when it did not allow the defendant to call his uncle to the stand as a lay opinion witness on the question of the identity of the defendant. The defendant wanted to put his uncle on the stand to testify that the person selling the drugs in the video was not, in the uncle's opinion, the defendant. At a bench conference, the trial court stated that the witness could not testify because the identity of the individual in the videotape is a fact question for the jury.

Evidence must be relevant and probative to an issue at trial in order to be admissible. State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996); see also Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. State v. Williamson, 919 S.W.2d 69, 78-79 (Tenn. Crim. App. 1995); State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

Rule 701 of the Tennessee Rules of Evidence provides that a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

In Sanders v. United States, 809 A.2d 584 (D.C. Ct. App. 2002), the District of Columbia Court of Appeals made an extensive analysis of the introduction of lay witness testimony when identifying a defendant from a surveillance photograph or video in a series of Federal cases. Sanders, 809 A.2d at 594-97. At the conclusion of its analysis, the court held that before allowing such testimony, "the trial court at least should be reasonably satisfied that because of the either

obscured or altered appearance of the defendant, the lay witness is more likely to accurately identify the defendant than is the factfinder." Id. at 596. We find Sanders to be persuasive in this regard.

In State v. Powers, the Director of Surveillance at Sam's Town Casino, where the victim had last been seen alive, testified concerning the videotape and repeatedly referred to an individual in the video as "Mr. Powers" even though he had no prior knowledge of Mr. Powers. 101 S.W.3d 383, 413-14.

Citing this Court's opinion, the Tennessee Supreme Court ruled that the trial court erred in allowing the director's testimony because he had no more familiarity with the defendant than the jury did. However, the court found this error to be harmless because "the jurors saw the videotape and had the Defendant before them; each juror therefore had the opportunity to determine for her or himself whether the person in the video was the Defendant." 101 S.W.3d at 414.

In the case at hand, there was no testimony that the defendant's appearance had greatly changed. Agent Holmes did testify that his hair was different, but that was the only change. The videotape, which has been reviewed by this Court, has a clear view of the defendant. Under the Sanders guidelines, the defendant's appearance must have been altered, or the view of the defendant must have been obscured. Neither of those is the case here. It is in the trial court's discretion to admit evidence. We do not find an abuse of discretion here in the trial court's disallowance of the defendant's uncle as a witness.

In addition, even if disallowing the defendant's uncle's testimony had been error, it was harmless error. Chief Avery testified that he had known the defendant for seven or eight years. Therefore, it is clear that Chief Avery would be able to identify the defendant. The defendant also presented evidence through the testimony of his mother that he was asleep at the time of the drug sale. And finally, as in Powers, the jury was presented with both the defendant and the videotape at trial and had the opportunity to determine whether the individual in the videotape was actually the defendant. Presented with all this evidence, the jury found that the individual was indeed the defendant. Therefore, this issue is without merit.

For the foregoing reasons, we affirm the judgment of the trial court.

---
JERRY L. SMITH, JUDGE