# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 18, 2009 Session

## STATE OF TENNESSEE v. JULIE PETTY

**Appeal from the Circuit Court for Dickson County**
**No. CR9310     Robert E. Burch, Judge**

---

**No.  M2008-02732-CCA-R3-CD - June 16, 2010**

---

The Dickson County Grand Jury indicted Appellant, Julie Petty, for one count of sexual battery by an authority figure and one count of statutory rape by an authority figure.  These charges came about as a result of Appellant's sexual relationship with a fourteen-year-old girl who was a student at the school where Appellant was a substitute teacher and softball coach.  Appellant entered an open plea to one count of sexual battery by an authority figure.  Following a sentencing hearing, the trial court sentenced Appellant to four years with one year to be served in confinement and the remaining three years to be served on probation.  Appellant appeals from the trial court's imposition of this sentence.  On appeal, Appellant argues that the trial court should have imposed a three-year sentence with the entire sentence to be served on probation.  After a review of the record on appeal, we conclude that there is no basis for reversal of the trial court's judgment.  Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Jerred A. Creasy, Dickson, Tennessee, for appellant, Julie Petty.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Dan Alsobrooks, District Attorney General; and Ray Crouch, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Bree Abernathy is an eighth grade teacher at a middle school in White Bluff. In the 2006-2007 school year, Ms. Abernathy was pregnant and often required substitute teachers when she had medical appointments. Appellant, a substitute teacher and softball coach, substituted for Ms. Abernathy on more than one occasion. Appellant even volunteered to substitute specifically for Ms. Abernathy. Ms. Abernathy also taught Appellant's children. She stated that she knew Appellant fairly well. One time when Appellant offered to substitute for Ms. Abernathy, there was a bomb threat at the school. The entire school was evacuated and everyone was put on the football field. Ms. Abernathy was not able to attend her prior commitment as she had planned. She went to the football field and saw A.B.,[1] the victim, lying across Appellant's lap. Ms. Abernathy told Appellant and A.B. that they were acting inappropriately. They moved apart. A few weeks later, on May 16, 2007, Ms. Abernathy confiscated some letters from A.B. during her social studies class. She read the notes and recognized Appellant's handwriting.

In May 2007, Detective Stacey Patterson, with the Dickson County Sheriff's Office, responded to a call from the middle school in White Bluff. The detective met with the assistant principal. The detective also spoke on the telephone with a teacher and A.B. A.B. was a fourteen-year-old student at the middle school. Detective Patterson conducted an interview with A.B. A.B. admitted that she and Appellant were engaged in a sexual relationship, but A.B. maintained that it was consensual. During the interview, A.B. traced her hand and marked on the fingers how far Appellant had penetrated A.B. with her fingers. Following her in-person interview with A.B., Detective Patterson obtained arrest warrants for Appellant for the offenses of aggravated sexual battery by an authority figure and statutory rape by an authority figure.

The thirty-six-year-old Appellant was a substitute teacher and softball coach at the school. Appellant was a substitute teacher for a class that A.B. attended. During the investigation, Detective Patterson discovered that Appellant and A.B. engaged in sexual acts in the teen's living room, the locker room, and the social studies classroom at the school. At some point, they engaged in a sexual act in the classroom while Appellant was substitute teaching. At the school, Detective Patterson also collected cards and letters that had been exchanged between Appellant and A.B. One card from Appellant to A.B. ended with the handwritten line, "I will wait forever because you are my life and I love you, yours forever."

---

[1] It is the policy of this Court to refer to minor victims by their initials.

Detective Patterson also executed a search warrant for Appellant's residence. She collected a letter in Appellant's bedroom dresser drawer from A.B. There was also a letter in the trash can that had been burned. Detective Patterson spoke with Appellant briefly during the investigation. Appellant never expressed remorse for her actions.

Detective Scott Lavasseur is the Lieutenant in charge of the Cyber Crime Unit and Computer Forensic Lab, with the Dickson County Sheriff's Department. Detective Lavasseur was assigned to investigate computer evidence with regard to Appellant. He collected Appellant's laptop computer when he helped Detective Patterson execute the search warrant on Appellant's home. On the computer, Detective Lavasseur found a folder labeled with A.B.'s name. The folder contained individual pictures of the victim, a collage made of pictures of the victim, and a slide show of pictures of the victim. The images were not inappropriate. He also identified internet searches including "psychosexual exam" and searches for pornographic sites dealing with adult models posing as teenage girls. He also made photocopies of the call logs in Appellant's cellular telephone. A.B.'s name was found in both Appellant's contact list and speed dial list. The call log listed calls made by Appellant to A.B. and calls received by Appellant from A.B.

Detective Lavasseur also investigated communication that occurred on MySpace, an internet social networking site. He discovered that Appellant and A.B. had been communicating by e-mail through MySpace from January 14, 2007, through May 5, 2007. Detective Lavasseur stated that the e-mails beginning in January 2007 were normal conversations between a teacher/coach and student. However, in March 2007, the e-mails started getting more personal and started talking about things Appellant and A.B. had done together. He stated that the conversations began to include some innuendo. He said that from the e-mails it appeared that Appellant's and A.B.'s relationship became more intense. At some point during their MySpace conversations, both Appellant and A.B. changed the names that identified them on the computer screen. Detective Lavasseur stated that there were several other students who were contacting Appellant on her MySpace account. However, they referred to Appellant as "Coach" or "Ms. Julie." A.B. never used such terms of respect when sending her messages. On May 5, 2007, Appellant posted a message on A.B.'s account that stated, "I think I'm having DIA withdrawal. Do you think you could help me out?" During the investigation, the detectives discovered that "DIA" stood for "Daily Intake of [the victim]."

Detective Lavasseur stated that at the end of this investigation he found out that Appellant's husband had been convicted for offenses in connection with sexually abusing Appellant's daughter. He admitted that her internet search for "psychosexual exam" could have been connected with that fact.

Appellant also testified. She stated that she is the mother of four children. She has been separated from her husband since January 2007 due to allegations that her husband had been sexually molesting one of her daughters. Her husband pled guilty to sexual battery. She admitted that she had an inappropriate relationship with the victim and stated that it was the biggest mistake of her life. She excused her behavior by stating that her family situation in early 2007 took a toll on her "in every way, emotionally, mentally." Appellant stated that she turned to the victim for comfort because of her family turmoil. Appellant stated that she has had no contact with the victim since the criminal charges were filed against her.

When asked on cross-examination about how the effect of her relationship with the victim compared to her husband's abuse of her daughter, Appellant stated the following, "I know that this relationship caused her family a lot of pain; and I do regret that. I never meant for it – I know it's still very painful to them even though it was a consensual relationship." She stated that her husband is no longer allowed to have contact with the children and that she knew her relationship with A.B. might result in a similar consequence for her. She admitted even though she knew the possible consequence she still continued her relationship with the victim. Also on cross-examination, the State asked Appellant if there were any signs in her communications with the victim that she would have ended the relationship with the victim had her letter not been confiscated at the school. Appellant replied, "Not in the evidence presented today."

In September 2007, the Dickson County Grand Jury indicted Appellant for one count of sexual battery by an authority figure and one count of statutory rape by an authority figure. Appellant pled guilty to one count of sexual battery by an authority figure, a Class C felony. The trial court conducted a sentencing hearing on October 20, 2008. The trial court sentenced Appellant to four years as a Range I, standard offender. Appellant was ordered to serve one year in incarceration and serve the remaining three years on probation.

Appellant filed a timely notice of appeal.

## ANALYSIS

### Length of Sentence

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting

*State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following *advisory* sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (emphasis added). However, the weight given by the trial court to the mitigating and enhancement factors are left to the trial court's discretion and are not a basis for reversal by an appellate court of an imposed sentence. *Carter*, 254 S.W.3d at 345. "An appellate court is . . . bound by a trial court's decision as to the length of the sentence

imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

Initially, we note that Appellant has failed to include a transcript from the guilty plea hearing. "[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the basis of appeal." Tenn. R. App. P. 24(b). In addition, when a record is not complete and does not contain relevant information, this Court must presume that the trial court was correct in its ruling. *See State v. Richardson*, 875 S .W.2d 671, 674 (Tenn. Crim. App. 1993); *State v. Cooper*, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987). With regard to the failure to include a guilty plea hearing transcript, we have stated the following:

This court has previously noted,

> For those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

> *State v. Keen*, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999) (citation omitted). Accordingly, the appellant's "failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a full de novo review of the sentence under [Tennessee Code Annotated section] 40-35-210(b)." *State v. Shatha Litisser Jones*, No. W2002-02697-CCA-R3-CD, 2003 WL 21644345, at *3 (Tenn. Crim. App. at Jackson, July 14, 2003).

*State v. Chadwick Allen Johnson*, No. 2005-02219-CCA-R3-CD, 2008 WL 1850808, at *4 (Tenn. Crim. App., at Knoxville, Apr. 25, 2008). Nonetheless, based upon the evidence presented at the sentencing hearing, we conclude that the evidence supports the trial court's imposition of a sentence of four years with one year to be served in confinement and three years to be served on probation.

On appeal, Appellant argues that the trial court erred when weighing the enhancement and mitigating factors and should have instead sentenced Appellant to three years. As stated above, on appeal, this Court may not reverse an appellant's sentence based upon a trial court's weighing of enhancement and mitigating factors when determining the sentence in question.

Appellant tries to mask the crux of her argument by cursorily stating that the enhancement factor, that the offense was committed on the grounds of a pre-kindergarten through grade twelve institution, *see* T.C.A. § 40-35-114(15), "was considered as part of the offense when the legislature created this offense and enhanced the punishment for any sexual contact by an authority figure." It is true that if an enhancement factor is an element of an offense, it may not be used to enhance a defendant's sentence. T.C.A. § 40-35-114. We conclude that there is no basis for Appellant's argument that enhancement factor (15) is inherently an element of sexual battery by an authority figure. Tennessee Code Annotated section 39-13-527(3) states:

> (a) Sexual battery by an authority figure is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by the following circumstances:

> (1) The victim was, at the time of the offense, thirteen (13) years of age or older but less then eighteen (18) years of age; or

> (2) The victim was, at the time of the offense, mentally defective, mentally incapacitated or physically helpless, regardless of age; and,

> (A) The defendant was at the time of the offense in a position of trust, or had supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional or occupational status and used the position of trust or power to accomplish the sexual contact; or

> (B) The defendant had, at the time of the offense, parental or custodial authority over the victim and used the authority to accomplish the sexual contact.

The statutory language does not include a location of the sexual battery as an element of the offense. Nor does the statute even restrict the class of perpetrators to teachers. We conclude

that enhancement factor (15) cannot be considered an element of the offense of sexual battery by an authority figure. Therefore, this factor is not precluded from application to enhance Appellant's sentence.

After a review of the record, we find no basis for reversal of the trial court's imposition of Appellant's four-year sentence.

Therefore, this issue is without merit.

## **Probation**

Appellant also argues that the trial court erred in sentencing Appellant to one year of confinement followed by three years of probation. As stated above, we must presume the trial court's sentence is correct due to the failure to include the guilty plea hearing transcript in the record on appeal. With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders:

> [A]nd who is an especially mitigated offender or standard offender convicted of a Class C D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . A court shall consider, but is not bound by, this advisory sentencing guideline.

T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* T.C.A. § 40-35-303(a) (2006).

All offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727

S.W.2d 229, 235 (Tenn. 1986)).  Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C).  In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *see also State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).  The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation.  *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the sentencing hearing, the trial court stated that it was not going to completely suspend Appellant's sentence because to do so "would depreciate the seriousness of the offense; and mainly because the facts of this offense are more reprehensible than the normal statutory offense because it was committed over a period of time on the school – particularly on the school grounds during school hours."  To deny probation based solely on the nature and circumstances of the offense, "the criminal act, as committed, must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring probation." *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1985) (quoting *State v. Cleavor*, 691 S.W.2d 541, 543-44 (Tenn. 1985)); *see also State v. Fields*, 40 S.W.3d 435, 441 (Tenn. 2001).

We conclude that the evidence presented supports the decision of the trial court, and the trial court did not abuse its discretion in ordering Appellant to serve one year in confinement. The evidence at the sentencing hearing showed that Appellant was a substitute teacher and coach at the middle school. The victim was a student in Ms. Abernathy's class. Appellant specifically requested to substitute in the class where victim was a student. On at least one occasion there was sexual contact between Appellant and the victim while Appellant was teaching the class. In addition, the thirty-six-year-old Appellant testified that she turned to a sexual relationship with a fourteen-year-old girl for comfort after the dissolution of her marriage because of Appellant's husband's sexual molestation of her own teenage daughter. Much of the sexual activity involving A.B. and Appellant occurred on school property. We agree with the trial court that the facts of the offense as presented constitute shocking, reprehensible, and offensive behavior so that incarceration is necessary to avoid depreciating the nature of the offense.

We find no evidence to support the reversal of the trial court's denial of full probation. Therefore, this issue is without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE