IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2015

**STATE OF TENNESSEE v. JEREMY GLEN NICHOLS**

**Appeal from the Circuit Court for Henderson County**
**No. 140983     Nathan B. Pride, Judge**

_____

**No. W2014-02276-CCA-R3-CD  -  Filed June 10, 2016**

_____

Defendant, Jeremy Glen Nichols, pleaded guilty to the vehicular homicides of A.D. (Count 1) and Teri Ann David (Count 2), the aggravated vehicular homicides of Teri Ann David (Count 3) and A.D. (Count 4), driving under the influence of an intoxicant (DUI)(Count 5), third offense DUI (Count 6), failure to yield resulting in death (Count 7), driving on a revoked license (DORL) (Count 8), DORL with a prior DUI (Count 9), and fourth offense DORL (Count 10). The trial court imposed an effective sentence of 44 years, 11 months, and 29 days.  On appeal, Defendant argues that his sentence is excessive.  After a thorough review, we affirm the sentence imposed by the trial court. However, we remand the case to the trial court for entry of separate judgment forms for each conviction, including those that must be merged, in light of the supreme court's order in *State v. Marquize Berry*, No. W2014-00785-SC-R11-CD, slip op. at 5 (Tenn. Nov. 16, 2015)(order granting Tenn. R. App. P. Rule 11).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Remanded for Entry of Additional Judgment Forms**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Michael Thorne, Jackson, Tennessee, for the Appellant, Jeremy Glen Nichols.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General, James G. (Jerry) Woodall, District Attorney General; Matthew Floyd and Christopher W. Post, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

*Sentencing Hearing*

Christopher Crownover testified that at approximately 5:00 p.m. on May 20, 2013, he was parked in the parking lot of the Sand Ridge Baptist Church in Lexington waiting to meet a friend. The sky was clear, and the sun was still out. He was parked in the front lot of the church facing Highway 412. Mr. Crownover testified that as he was waiting in the parking lot, he heard a "loud ruckus coming from Sand Ridge Road behind the church. It sounded like a vehicle." Mr. Crownover said that the vehicle, which was being driven southward by Defendant, passed him at a high rate of speed. He testified that Defendant crossed the westbound lanes of Highway 412, without yielding or stopping at a stop sign. Mr. Crownover testified that Defendant's vehicle then crossed the median of Highway 412 and failed to yield to the vehicle being driven eastbound on Highway 412 by twenty-one-year-old Teri Ann David. Teri Ann David was twenty-nine weeks pregnant with her daughter, A.D. (It is this Court's policy not to reveal the names of minor victims). Mr. Crownover testified that Defendant's vehicle struck the side of Ms. David's vehicle "in a T-bone effect," and both cars went over the guardrail into a "ditch [or] ravine."

Teri Ann David was transported to the hospital and died as a result of her injuries. Her daughter, A.D., was delivered by Cesarean Section but the placenta had detached, and she died a few hours later.

Trooper Maureen Velez of the Tennessee Highway Patrol (THP) testified that she works with the Critical Incident Response Team, "a specialized unit that assists the troopers with the investigation of fatality crashes and felony crashes. Trooper Velez was declared an expert in "traffic crash reconstruction."

Trooper Velez testified that she responded to the scene of the wreck on May 20, 2013, at approximately 8:00 to 8:30 p.m. Both vehicles were still in their "final rest positions." She observed the roadway and evidence pertaining to the crash. She later returned to the area during daytime hours to "map the scene." Trooper Velez testified there was a stop sign at the intersection of Sand Ridge Road and Highway 412 to stop southbound vehicles on Sand Ridge Road before they enter "the westbound lanes of 412" and that there was a "yield sign at the paved crossover" of the median instructing drivers "who had crossed over the westbound lanes of Highway 412" to yield before entering the eastbound lanes of Highway 412. She noted that both drivers would have had full view of the intersection. Based on her observations and on witness statements, Trooper Velez determined that Defendant caused the wreck when he failed to yield to Ms. David's vehicle, which was traveling eastbound. She noted that speed was not a factor in the

2

crash. It was her opinion that Ms. David's vehicle was in the intersection at the time of the collision.

Special Agent Bethany McBride, a forensic scientist with the Tennessee Bureau of Investigation (TBI), testified that she tested a sample of Defendant's blood and found that it contained THC ,"which is an inactive metabolite for marijuana use," Diazepam and its metabolite Nordiazepam, and Tramadol. Special Agent McBride explained that Diazepam or Nordiazepam is a more common name for Valium. She testified that Valium is a central nervous system (CNS) depressant, "so it depresses most of the body's functions" and "puts a person in a relaxed state[.]" Special Agent McBride testified that Tramadol is a synthetic opioid, an analgesic that relieves moderate to severe pain. She said that when combined with Valium, Tramadol enhances the effects of Valium such as drowsiness and sleepiness. The blood sample was sent for further testing which revealed the presence of morphine. Special Agent McBride testified that morphine is an opiate which depresses the CNS and gives a person a relaxed feeling. She said that some of the effects of morphine include "drowsiness, the slow reaction time, not being able to think clearly, those are some of the side effects." Special Agent McBride testified that combining all of the medications would enhance the side effects of each drug. It was her personal opinion that individuals with those levels of drugs in their system should not be driving.

Sergeant Dwayne Stanford of the THP testified that in May of 2013, he was assigned to the Criminal Interdiction Unit. On May 20, 2013, at approximately 6:48 p.m., he was dispatched to the emergency room of the Henderson County Community Hospital where he advised Defendant of his *Miranda* rights. Defendant waived his right to counsel and spoke to Sergeant Stanford. Sergeant Stanford testified:

> During my contact with [Defendant] I observed that his eyelids were droopy. He displayed low, slow, and slurred speech. He was lethargic, displayed a flushed face.
>
> He also seemed to be indifferent about the situation that he was involved in. He was concerned about other obligations that were going on at the time such as his daughter's graduation.

Sergeant Stanford testified that Defendant also appeared to be "on the nod, which is basically an indicator of a narcotic analgesic, which was present within the blood system for the eventual test." He felt that Defendant was under the influence of a depressant and a narcotic analgesic. Sergeant Stanford did not recall if the hospital staff had administered any medication to Defendant.

3

Several of Teri Ann David's family and friends testified at the sentencing hearing. They were devastated by the deaths of Ms. David and A.D. They felt that Defendant should be sentenced to the maximum sentence for his offenses. Ms. David's step-mother, Angela David, testified that Ms. David's father, Todd David, had cancer at the time of the victims' deaths, and their deaths were very hard on him. Mr. David passed away approximately six months after their deaths.

Defendant testified that he is thirty-six years old and has three children that he was supporting prior to the accident. The children now reside with their grandparents. Defendant testified that he dropped out of school in the twelfth grade and began working in construction work. He said that he developed back and knee pain and sought medical treatment. Defendant testified that he was prescribed pain medication that he took for several years. In the presentence report, Defendant admitted to having a problem with "illegal drugs, marijuana, meth, and has a history of abusing pain pills." Defendant admitted that he regularly smoked marijuana. He was using other medications at the time of the accident because he had run out of the pain medicine.

Defendant testified that his arrests for driving without a license occurred because he had to get to work. He said that he had been going to a pain clinic but he was dismissed for failing a drug test by testing positive for marijuana. Defendant testified that he had been enrolled in two previous treatment programs but they did not work because he has an "addictive personality." He was using methamphetamine and "occasionally pain pills" at the time that he was enrolled in the programs. Defendant was on probation for domestic assault and driving on a revoked license at the time of the accident in this case. He said that since his sixteen-month incarceration for the probation violation and the offenses in this case, he no longer has a desire to drive or use drugs. Defendant testified that he had taken morphine and valium the day before the accident because his back had been "bothering" him. He had purchased the drugs illegally on "the street." Defendant testified that he had been at work earlier in the day before the accident.

Defendant claimed that on the day of the accident, he stopped before entering Highway 412 and that he pulled out in front of Ms. David's car because he didn't see it. He said that he got out of the car and checked on Ms. David after the accident, and she appeared to be unconscious. Defendant testified that he was given a shot of pain medicine after he was taken to the hospital by ambulance and that Sergeant Stanford was there when a second shot of morphine was administered to Defendant. He said that Sergeant Stanford interviewed him after the shots were given. When asked if Sergeant Stanford's description of Defendant's physical condition was accurate, Defendant replied, "[n]ot to my knowledge." Defendant testified that he was arrested four days after

4

being released from the hospital. He did not recall if there were any other vehicles near the intersection of Sand Ridge Road and Highway 412 at the time of the accident.

On cross-examination, Defendant testified that his probation for domestic assault and driving on a revoked license was violated due to the crash in this case and because he failed to report to his probation officer. He also failed to show proof of counseling and pay court costs and supervision fees. Defendant admitted that during a previous incident of DUI, his second offense, the arrest warrant indicated that he nearly caused a head-on collision because he was driving on the wrong side of the road. He later pled guilty to that DUI. Defendant admitted that he had taken Valium, morphine, Tramadol, and he smoked marijuana at some point prior to the accident. He did not have prescriptions for the Valium, morphine, or Tramadol. He said that he took Valium and smoked marijuana not for pain but because he liked the way it made him feel. Defendant agreed that his criminal history was extensive. Defendant agreed that he has not had a valid driver's license since 1998. Despite this, he admitted that he has continued to drive. Concerning the accident, Defendant testified that he stopped at the stop sign but then drove through the median because he did not see any vehicles coming.

*Analysis*

Defendant challenges both the length of his sentences and the trial court's order of consecutive sentencing.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are *advisory only*. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select *any sentence within the applicable range* so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343 (*emphasis added*). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

In his brief, Defendant challenges only the length of the sentence imposed for his two convictions for aggravated vehicular homicide. The applicable sentencing range for a Range I offender convicted of a Class A felony is 15 to 25 years. The trial court imposed a sentence of 22 years for each count of aggravated vehicular homicide.

The trial court stated on the record its findings regarding applicable enhancement and mitigating factors. The trial court found five enhancement factors applicable to Defendant: (1) that Defendant has a previous history of criminal convictions or behavior, in addition to those necessary to establish the appropriate range; (2) that the personal injuries inflicted upon the victim were particularly great; (3) that the offense involved a victim and was committed to gratify Defendant's desire for pleasure and excitement; (4) that Defendant had no hesitation about committing a crime when the risk to human life was high; and (5) that Defendant was on probation at the time of the offenses for driving on a suspended license and domestic violence. T.C.A. § 40-35-114 (1), (6), (7), (10), and (13)(C). The trial court found one mitigating factor applicable: that Defendant had pleaded guilty to avoid putting the victims' family through the trauma of a trial, and he had indicated that he was remorseful. T.C.A. § 40-35-113(13). Defendant contends that the "record does not support a sentence enhanced seven (7) years above the minimum

sentence of the range of punishment." More specifically, Defendant argues that "the sentence imposed was arbitrarily applied at twenty-two (22) years for each of the Class A felony convictions because the record is devoid of any specific weight given to each enhancement and mitigating factors applied." We note that the trial court improperly applied enhancement factors (6) to Defendant's aggravated vehicular homicide convictions as this is an element of the charged offenses. *See* T.C.A. § 40-35-114(6); *See also State v. Williamson*, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995).

In *Bise* our supreme court held:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court *wholly departed* from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706 (*emphasis added*). In its conclusion, the supreme court pointed out that in sentences involving misapplication of enhancement factors (even in those cases where *no* enhancement factor actually applies) the sentences must still be affirmed if the sentences imposed are within the appropriate range, and the sentences are in compliance with statutory sentencing purposes and principles. *Id*. at 710.

Our General Assembly has enacted twenty-five (25) statutory sentencing enhancement factors; however, they are not binding upon the trial courts. T.C.A. § 40-35-114 (Supp. 2015). The standard of review established in *Bise* provides that the minimum sentence can be imposed even if the trial court correctly applies all twenty-five enhancement factors, or the maximum sentence imposed even if no statutory enhancement factors are applicable, as long as the sentence is within the correct range and the sentence complies with other sentencing purposes and principles. Accordingly, appellate review of enhancement factor issues is arguably superfluous when reviewing the length of a sentence.

Having reviewed the record before us, we conclude that the trial court clearly stated on the record its reasons for the sentences imposed, and all of Defendant's sentences are within the appropriate ranges. The record reflects that the trial court considered the purposes and principles of the Sentencing Act. Defendant argues that the trial court improperly applied enhancement factors 7 and 10 to his sentences, and we found that enhancement factor (6) does not apply. However, even though the trial court improperly applied enhancement factor (6), under *Bise*, we would still lack grounds to

7

reverse Defendant's sentences.  Therefore, the trial court's imposition of 22 years for each count of aggravated vehicular homicide is presumed reasonable.

Our supreme court has also extended the standard of review enunciated in *State v. Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations.  *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013).  Tennessee Code Annotated section 40-35-115 sets forth the factors that are relevant in determining whether sentences should run concurrently or consecutively.  The trial court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the seven statutory factors exist.  *Id*. § -115(b).  Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense."  T.C.A. § 40-35-102(1).  The length of the resulting sentence must be "no greater than that deserved for the offense committed."  T.C.A. § 40-35-103(2).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

> (2) The defendant is an offender whose record of criminal activity is extensive;

> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

8

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).

In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*; *Bise*, 380 S.W.3d at 705.

In this case, the trial court found two statutory factors. The trial court found that Defendant was an offender whose record of criminal activity is extensive and that Defendant was a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. With regard to the court's finding that Defendant's record of criminal activity is extensive, the trial court stated:

> Starting at the age of 18 and going forward with criminal activity, so half of his life - - he's 36 now - - he's been doing criminal activity. And it's gone from intoxication all the way up to now homicide, vehicular homicide. So it's gotten worse and it's extensive.
>
> This is a - - This the Court feels is every parent's nightmare. And we all have children, those that have children, and they're 16, 17, 18, 19, 20, 21, young children, when the phone rings at night you hope that that's not the phone call that you're going to get that says my child has been in an accident and my child has had something happen to them. And certainly you don't want it to be as a result of a person who has an extensive record.
>
> And the Court wants to point out that the factors that are most significant [are] the two prior DUIs that Defendant had which took his license, require[d] counseling, required him to go to some things that would have perhaps pointed out the error of taking drugs and alcohol and getting behind the vehicle (sic) of a car, yet he did that.

9

The trial court also pointed out that Defendant was on probation with a pending violation of probation at the time he committed the offenses in this case.

Defendant's criminal record is indeed extensive. He has a total of twenty-one prior convictions: one for driving while impaired, two DUIs, six driving on a revoked or suspended license convictions, two simple domestic assaults, three public intoxications, one attempted vehicle burglary, two theft of properties under 500 dollars, two reckless driving, one simple possession of marijuana, and one disorderly conduct conviction. Ten of the convictions are Class A misdemeanors. Defendant contends that the trial court improperly applied this factor because all of his prior convictions are misdemeanors. However, this court has previously found that a criminal record consisting only of misdemeanors supports the imposition of consecutive sentencing. *State v. Marquon Lanorris Green*, No. W2012-01654-CCA-R3-CD, 2013 WL 2405217, at *7 (Tenn. Crim. App. May 30, 2013). This factor alone supports consecutive sentencing.

As for no hesitation about committing a crime in which the risk to human life is high, the trial court found:

> Lastly - - and the State has asked the Court to look at the Defendant being a dangerous offender[] whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. And the Court must apply all three of these following factors in order to use this particular ground as an enhancing factor.
>
> First of all the Court believes any time [Defendant] ingests illegal drugs and/or alcohol that he becomes a dangerous offender, and his history indicates that.
>
> Any time he operates a vehicle, which apparently he did on a regular basis, indicates little or no regard for human life, because any time he does that it's just a matter of time.
>
> And I think even from some of the criminal history that we have here, just by the grace of God nobody else was hurt. So he had no hesitation about committing a crime, that crime being driving on suspended, revoked, or canceled license. And any time he did that he placed human life at risk.

The trial court found the loss of the two victims' lives were an aggravating circumstance in this case as well as disregarding a stop sign on a highway known to have

10

high traffic driving at 65 miles per hour. The trial court also found that confinement in Defendant's case for an extended period of time is necessary to protect society from Defendant's unwillingness to lead a productive life and Defendant's "resort to criminal activity in furtherance of a antisocial lifestyle." The trial court stated:

> It's clear from the record that [Defendant] has been using drugs and alcohol for at least 18 years. The Court has a duty to protect all citizens in Henderson County and Madison County, anywhere in this state from those who over and over and over again show an unwillingness to comply with instructions from the Court, number one, and those deemed necessary to lead a productive life.
>
> He works, he has a family. His mother obviously loves him quite a - - quite a bit and has done apparently everything she can within her power to try to get [Defendant] to turn from what's been a nonproductive life in terms of his use of - - continued use of drugs and alcohol to a productive life, just caring for himself and his children. But it didn't happen, and it didn't happen on May 20, 2013.
>
> [Defendant] voluntarily has led this criminal life and taken these drugs. Nobody put a gun to his head. Nobody made him do it. I don't think any of these cases - - I think one of those - - I think the theft charge had a codefendant in it, but even in that case he broke into somebody's house with the purpose of stealing to sell the items to get drugs.

The trial court further found that consecutive sentencing reasonably related to the severity of the offenses. The court pointed out that two people were killed by Defendant's actions, and that it is impossible to value a life. The court also found that consecutive sentences would not constitute cruel punishment and that it was not unwarranted in this case.

The record supports the trial court's findings. Defendant has at least two other convictions for DUI, and he has not had a valid driver's license since 1998. During one of Defendant's previous incidents of DUI, he crossed four lanes into oncoming traffic and nearly caused a head-on collision with another vehicle. He admitted that this experience had not "scared him straight" as he has continued to drive on a revoked license while under the influence of an intoxicant.

We conclude that the trial court did not abuse its discretion in sentencing Defendant to an effective sentence of forty-four years, eleven months, and twenty-nine

11

days for his two convictions for aggravated vehicular homicide, failure to yield resulting in death, and fourth offense driving on a revoked license with a prior DUI.

Although not raised by either party, we point out that the trial court did not enter a judgment for each conviction in this case. In addition, the trial court erred in its determinations of what convictions must be merged. The trial court's announcement from the bench of the sentences imposed is as follows:

> In Counts Four, Five, and Six, the Court's going to sentence [Defendant] to 22 years in the Tennessee Department of Corrections. [sic]

> In Counts Two, Three, Five [sic], and six [sic], the Court will sentence [Defendant] to 22 years in the Tennessee Department of Corrections [sic].

> These are to be consecutive sentences.

> The Court in Count Seven sentences [Defendant] to 11 months and 29 days.

> The Court in Counts Eight, Nine, and Ten, sentences [Defendant] to 11 months and 29 days. And these are to be consecutive to each other.

Later in its ruling from the bench, at the urging of Defendant's counsel, the trial court stated that it would "take it under advisement, sentencing as to Counts Seven, Eight, Nine, and Ten, as to whether or not they should be - - or whether or not the Court can, because there are some - -." The transcript reflects that the trial judge never finished this pronouncement because the Assistant District Attorney General interrupted to request clarification on whether the trial court ordered drug treatment for Defendant during his period of incarceration. However, the trial judge had already stated that he might "be required" to merge the DUI convictions that are reflected in Counts 5 and 6, even though the discussion in court was about Counts 8-10.

The trial court requested the State to prepare the judgments (as is required by statute, T.C.A. § 40-35-209(e)(1)(A)-(S)), to which the Assistant District Attorney agreed. The judgments were filed November 3, 2014. The best way to describe the judgments in the kindest way is to simply state that they are a mess.

First, there is no separate order in the appellate record, concerning the trial court's ruling on merger of certain offenses that was promised by the trial court when it took the issue under advisement. Second, there is not a judgment for each individual charge in the

indictment, as required. *See State v. Marquize Berry*, No. W2014-00785-SC-R11-CD, slip op. at 5 (Tenn. Nov. 16, 2015)(order granting Tenn. R. App. P. Rule 11).

Third, the trial court in its ruling from the bench, and also in the judgments, failed to specifically impose any sentences for the DUI convictions and the vehicular homicide convictions. The trial court attempted to impose a sentence of 22 years for each aggravated vehicular homicide conviction that included the convictions for DUI and vehicular homicide.

The trial court referred to the numbers in the indictment in pronouncing the sentence. We will insert the actual offenses referenced for the sentencing structure announced by the trial court. First, this is a list of convictions by the count numbers in the indictment:

Count 1    Vehicular homicide of A.D., a Class B felony
Count 2    Vehicular homicide of Teri Ann David, a Class B felony
Count 3    Aggravated vehicular homicide of Teri Ann David, a Class A felony
Count 4    Aggravated vehicular homicide of A.D., a Class A felony
Count 5    DUI, a Class A misdemeanor
Count 6    DUI, third offense, a Class A misdemeanor
Count 7    Failure to yield resulting in death, a Class A misdemeanor
Count 8    Driving on canceled, suspended, or revoked license, a Class B misdemeanor
Count 9    Driving on canceled, suspended, or revoked license, and the license was canceled, suspended, or revoked because of a DUI conviction, a Class B misdemeanor
Count 10   Driving on canceled, suspended, or revoked license with three prior convictions for driving on a canceled, suspended, or revoked license with three prior convictions for driving on a canceled, suspended, or revoked license, a Class A misdemeanor.

The trial court announced from the bench that for the convictions of aggravated vehicular homicide of A.D., DUI, and DUI, third offense, Defendant was sentenced "to 22 years in the Tennessee Department of Correction[]." Further, the trial court noted that for the vehicular homicide of Teri Ann David, the aggravated vehicular homicide of Teri Ann David, the DUI, and the DUI, third offense, Defendant was sentenced "to 22 years in the Tennessee Department of Correction[s]," with the two sentences of 22 years to be served consecutively to each other.

The trial court sentenced Defendant to 11 months and 29 days for the conviction of failure to yield resulting in death, and to 11 months and 29 days for each driving on a

13

canceled, suspended, or revoked license. These sentences for Counts 8 and 9 are illegal, as the maximum sentence for a Class B misdemeanor is six months, and the sentences for Counts 8 and 9 must be modified accordingly.

The judgments entered by the trial court are somewhat different than what was announced in open court. In one judgment which purportedly deals with the convictions for vehicular homicide of A.D., aggravated vehicular homicide of A.D., DUI and DUI, third offense, the judgment reflects that the only conviction offense is aggravated vehicular homicide of A.D. with a sentence of 22 years. The second judgment is identical, except that it references the convictions as to the death of Teri Ann David. In open court, the trial court overlooked the conviction in Count 1 for vehicular homicide of A.D.

The identical information is contained in the "Special Conditions" section of each of these judgments. It states:

> To serve. Both Aggravated Vehicular Homicide charges are consecutive. The Failure to Yield Resulting in Death and DORL 4[th] w/ a Prior DUI charges are concurrent to each other but are consecutive to the Aggravated Vehicular Homicide charges. Total effective sentence is 44 years 11 months 29 days. Driving privileges are revoked for 10 years. Recommend special treatment. Counts 1, 4, 5, 6 merge. Counts 2, 3, 5, 6 merge. Counts 8, 9, 10 merge.

There is a separate judgment for Count 7, with 11 months 29 days to serve, concurrent with the sentence in Counts 8, 9, and 10, and one judgment purportedly disposing of all three convictions under Counts 8, 9, and 10, with a sentence of 11 months and 29 days to serve by incarceration.

Our supreme court in *State v. Marquize Berry*, addressed the issue of judgment forms for multiple convictions. The court stated as follows:

> [W]hen two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document *for each count*. The judgment document for the greater (or surviving) conviction should reflect the jury verdict on the greater count and the sentence imposed by the trial court. The judgment document for the lesser (or merged) conviction should reflect the jury verdict on the lesser count and the sentence imposed by the trial court. Additionally, the judgment document should indicate in the "Special Conditions" box that the conviction merges with the greater conviction. To avoid confusion, the

14

> merger also should be noted in the "Special Conditions" box on the uniform judgment document for the greater or surviving conviction.
>
>    *   *   *
>
> When the jury returns guilty verdicts on multiple offenses that eventually will be merged, the best practice is for the trial court to impose a sentence on each count and reflect the sentence on the respective uniform judgment document.

No. W2014-00785-SC-R11-CD, slip op. at 5(emphasis in original).

Thus, the trial court in this case erred by not entering separate judgments for each of Defendant's convictions for vehicular homicides of A.D. (Count 1) and Teri Ann David (Count 2), the aggravated vehicular homicides of Teri Ann David (Count 3) and A.D. (Count 4), DUI (Count 5), third offense DUI (Count 6), DORL (Count 8), DORL with a prior DUI (Count 9), and fourth offense DORL (Count 10).

While we affirm the total effective sentence of 44 years, 11 months and 29 days, in order for the judgments to conform with *Marquize Berry*, and the requirements of merger of offenses which are alternative theories or lesser included offenses of other convictions, *see State v. Addison*, 973 S.W.2d 260, 266-67 (Tenn. Crim. App. 1997)(overruled by implication on other grounds by *Marquize Berry*) we remand this case for the trial court to enter a judgment for each count of the indictment. The trial court's failure to order a specific sentence for each DUI conviction and each vehicular homicide conviction also mandates that a sentence be imposed in those convictions in the judgments pursuant to *Marquize Berry*. Also, the sentences for driving on suspended, canceled, or revoked licenses in Counts 8 and 9 must be within the parameters for a Class B misdemeanor conviction.

The special conditions box of each of the ten judgments must reflect any merger applicable to that conviction. In the judgments, the following mergers of convictions must be accomplished:

   (a) Count 1, vehicular homicide of A.D., must merge with Count 4, aggravated vehicular homicide of A.D.

   (b) Count 2, vehicular homicide of Teri Ann David, must merge with Count 3, aggravated vehicular homicide of Teri Ann David.

   (c) Count 5, DUI, must merge with Count 6, DUI, third offense.

15

(d) Count 6, DUI, third offense, with Count 5 merged with it, must in turn be merged with Count 3, aggravated vehicular homicide of Teri Ann David and Count 4, aggravated vehicular homicide of A.D.

(e) Count 8, driving on canceled, suspended or revoked license, must merge with Count 10, driving on canceled, suspended, or revoked license with three prior convictions for driving on a canceled, suspended, or revoked license.

(f) Count 9, driving on a canceled, suspended or revoked license because of a prior DUI conviction must also merge with Count 10.

In order to implement the total effective sentence which we affirm, the judgments must provide that the sentence in Count 4 must be served consecutive to the sentence in Count 3; and the sentences in Count 7 and Count 10 must be served concurrently with each other but consecutively to the sentence in Count 4. The trial court shall also impose sentences for the convictions in Counts 1, 2, 5, 6, 8, and 9 prior to the merger.

*Conclusion*

The total effective sentence of 44 years, 11 months and 29 days is affirmed. However, the case is remanded for entry of a judgment for each of the ten counts of the indictment consistent with this opinion and for sentencing in Counts 1, 2, 5, 6, 8, and 9.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

16